AUGUSTINE J. DALRYMPLE, Administrator, *et al. vs.* MARIE E. GAMBLE and GEORGE H. GAMBLE.

*Letters of Administration—Revocation of Letters of Administration on Production of Will—When Administration may be Granted in the Discretion of the Orphans' Court—Act of 1874, ch. 483, sec. 104—Power of Revocation—Foreign will—Domestic will.*

Where letters of administration have been granted upon the personal estate in this State, of a person who died in California, the Orphans' Court, upon the production and filing of a copy of the will of the deceased duly authenticated, may revoke the letters previously granted by it, and issue new letters with the will annexed, there being no executor named in the will.

Nor is the Orphans' Court under any legal obligation to await the result of an equity suit instituted to determine the effect and operation of the will, before they proceed to revoke the letters previously granted.

Where there is no executor appointed by the will, and no residuary legatee claiming administration upon the estate of the deceased,

Dalrymple, Adm'r, *et al. vs.* Gamble.

and there is no widow, the next of kin are entitled to letters, unless by their own act they have waived or forfeited their right; and if they, upon being summoned or notified, decline or refuse to appear, and the creditors or more remote collaterals do not themselves apply, administration may be granted in the discretion of the Court.

The Act of 1874, ch. 483, sec. 104, which provides "that administration shall not be granted to any one in this State, except the next of kin, residuary legatee, or a creditor," was held to have no application to this case.

The power to revoke letters of administration is necessarily inherent in the Orphans' Court, and a part of the essence of the power delegated to it of granting administration.

A foreign will duly authenticated, stands upon the same footing as a domestic will, as to the granting of letters of administration with the will annexed; and the Orphans' Court has the same power to revoke letters of administration previously granted, in the one case as in the other.

The power of revocation of letters of administration is not an arbitrary or capricious power, but only to be exercised upon a state of facts which would warrant it.

APPEAL from the Orphans' Court of Baltimore City.

This appeal was taken from an order of the Court below, passed on the petition of Marie E. Hatch, and her supplemental petition filed after her intermarriage with George H. Gamble, revoking the letters of administration on the personal estate of William H. Dalrymple, in this State, which had been granted to Augustine J. Dalrymple, and directing letters of administration *cum testamento annexo*, on said estate, to be issued to J. Southgate Lemmon and Augustine J. Dalrymple. The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, IRVING, and BRYAN, J.

*Julian I. Alexander*, and *S. Teackle Wallis*, for the appellants.

*J. Southgate Lemmon,* and *Albert Ritchie,* for the appellees.

In revoking the letters, the Orphans' Court followed a practice founded on solid reason, which has long existed in this State, of always revoking letters granted upon the basis of a supposed intestacy, when that supposition has been removed ; and which practice has at least the tacit recognition of this Court in the case of *Siemer's Adm'r vs. Siemer,* 2 *G. & J.,* 62. But even had not such practice obtained, the Court below was clearly bound to have revoked letters by it improvidently issued within the forbidden period, and by the administrator wrongfully obtained during such period, through an allegation of intestacy which did not exist. *Emmert vs. Stouffer,* 64 *Md.,* 543, 550, 551 ; *Raborg vs. Hammond,* 2 *H. & G.,* 51 ; 1 *Williams' Executors,* (6th *Am. Ed.,*) 577, 581 ; *Georgetown College vs. Browne,* 34 *Md.,* 459 ; *Ehlen vs. Ehlen,* 64 *Md.,* 363.

If the letters of 1881 were properly revoked, whether by reason of the production of the will, or by reason of the improper manner in which they were originally obtained, it is manifest that the new letters should run *c. t. a.,* the will in July, 1886, having then been established in the Courts of the domicil beyond possibility of further objection by any one of these appellants. *State vs. Brown,* 64 *Md.,* 199, 203, 204 ; *Case vs. McGee,* 8 *Md.,* 9.

The occasion for issuing letters *c. t. a.* having arisen, the Court below had but one application for such letters before it, although all parties in interest were present, and ample notice of the application had been given.

That person was Mrs. Gamble, who asked the appointment of J. S. Lemmon her attorney, and his appointment was undoubtedly within the power and discretion of the Court, unless some one intervened with a claim based upon a better right.

The rights of next of kin, in cases of testacy, are at least purely statutory, and go only to that of administer-

ing ; and while the next of kin might have appealed from a refusal to grant letters for which they had applied to themselves, they háve no right to criticize the appointment of any one else, especially as they have no interest in the estate.

As, and while, and so long as they are in Court for the assertion of their own rights of administration *c. t. a.,* they have a "*locus standi,*" but after failing to ask for letters themselves, they only remain, if at all, as an obstruction to the settlement of the estate, contrary to the policy of the law, which looks to expedition in such matters. *Hoffman vs. Gold,* 8 *G. & J.,* 79; *Ehlen vs. Ehlen,* 64 *Md.,* 361, 362; *Carpenter vs. Jones,* 44 *Md.,* 625.

So far from any application having been made by the appellants, they deliberately refused to apply for letters *c. t. a.* by petition or word of mouth, even after the replication filed by the appellees, which, before the case was heard, distinctly called their attention to the necessity of so doing ; and if they failed to ask for their legal rights below, this Court, will not, by intendment or strained construction of any kind, place the will and property of the testator in the custody of those who repudiate the one in order to obtain the latter.

The appellant, Augustine, resisted the recall of his letters below, upon the ground that this particular will, which in terms said, " it is my will that my ranch and all my personal property shall be inherited by Marie Elizabeth Hatch," did not carry all the personal property of the testator, but only the property in possession at the time it was executed, and located in the State of the domicil. In the absence of some ambiguity of expression, or concurring circumstances showing a contrary intent, it is plain that the will must speak as of the day of the death of the testator, and operate upon whatever property falls within the terms used. *Hammond vs. Hammond,* 55

*Md.*, 582; *State vs. Robinson,* 57 *Md.*, 500; *Mayo vs. Mayo,* 4 *Md. Ch. Dec.*, 111; *Taylor vs. Watson,* 35 *Md.*, 523; 1 *Code Cal., page* 726, *sec.* 6333.

The existence and validity of the will having been established, as appears from the documentary evidence, and admissions in the pleading, and the will having been properly presented to the Orphans' Court, the letters were necessarily revoked. They had not only been issued before the end of the twenty days provided for in Rev. Code, 445, sec. 73, (*Ehlen vs. Ehlen,* 64 *Md.*, 363,) but the Court in granting them had been misled by the representations made in respect to the intestacy of William H. Dalrymple. Except in case of intestacy, the Court has no jurisdiction to issue letters of administration. *Rev. Code,* 445, *secs.* 70, 73; *Grimes vs. Talbert,* 14 *Md.*, 169; *Emmert vs. Stouffer,* 64 *Md.*, 543.

If letters testamentary have been granted, and the will afterwards be declared void, the letters are void. *Smith vs. Stockbridge,* 39 *Md.*, 645.

And so, if letters of administration be granted, and a will subsequently be established, the letters should be revoked. The distribution is different, and the letters should correspond.

If there be a will, the estate should be settled and administered under the direction and obligations of the will, and by one whose duty and oath require him to follow the will.

No application for letters *c. t. a.,* was made by the appellants, or by any one, except on behalf of Mrs. Gamble. Apart from her rights as sole, and, of course, residuary legatee, the appointment was then in the discretion of the Court. *Georgetown College vs. Browne,* 34 *Md.*, 459.

The appellants, refrained advisedly from making any such application. They practically repudiate the will, and their purpose was to remain free to attack, and, if possible, to destroy it. The duties of an administrator *c.*

*t. a.,* toward the will, are the same as those of an executor. Accepting the trust, it becomes his duty to defend the will, to carry out its provisions ; and he is not allowed to set up an adverse interest. *Hunter vs. Bryson,* 5 *G. & J.,* 488 ; *Hanson vs. Worthington,* 12 *Md.,* 459 ; *Schouler on Executors, sec.* 242.

An attack upon the will by an administrator *c. t. a.,* would be cause for removal.

The policy of the law is to give administration to the person *most interested in the estate. Ex parte Young,* 8 *Gill,* 286-7 ; *Thomas vs. Knighton,* 23 *Md.,* 326 ; *Georgetown College vs. Browne,* 34 *Md.,* 459.

In *Ward vs. Thompson,* 6 *G. & J.,* 349, the husband was excluded as administrator of the wife, because, under the marriage contract, he had no interest in her estate. In *Maurer vs. Naill,* 5 *Md.,* 324, the widow was excluded from administration on the estate of her husband on the same ground. *Maurer vs. Naill,* is approved in *Edelen vs. Edelen,* 11 *Md.,* 416.

STONE, J., delivered the opinion of the Court.

Edwin A. Dalrymple, died in Baltimore in October, 1881, intestate, and unmarried. His brother, William H. Dalrymple, died in California some weeks after the death of Edwin. Upon the death of Edwin A. Dalrymple, his brother, Augustine J. Dalrymple, took out in Baltimore letters of administration upon his personal estate in that city.

It appears that William H. Dalrymple left a will. That the will was contested, and after a long litigation the *factum* of the will was finally established by the Courts of California, and upon its establishment the devisee under such will filed a copy of it duly certified, &c. in the Orphans' Court of Baltimore City, where administration on the estate of Wm. H. had been granted, and prayed that Court to revoke the letters of administra-

tion that had been previously granted, and to grant letters of administration c. t. a., there being no executor named in said will.

The next of kin and heirs of Edwin resisted the petition of the devisee under the will to revoke the letters of administration for several reasons, and among them they allege that the will was only conditional and the condition did not in fact occur, &c., and that they have instituted proceedings in a Court of equity to determine the effect and operation of said will, and that until that matter is decided the letters should not be revoked. They insist that if it should turn out that the devise is void for any reason, or does not operate on the Baltimore property, the letters of administration c. t. a. would have to be revoked, and Augustine would have to be re-appointed, and that the matter should be delayed until that matter was settled, and it was shown whether the will was operative or not, and whether the devisee in fact took any thing under it. That if the devisee in fact took nothing under the will she had no right or standing to come into Court and ask for the revocation of the letters, and that being a preliminary question should first be settled, and this view the appellants have pressed with much force.

The appellees on the other hand contend that as soon as a will is filed, letters of administration previously granted should be revoked, and letters of administration c. t. a. should be granted to some one to defend such will if attacked, and to administer the estate according to the will, if it is admitted.

The questions for our decision may be divided into two.

The first is whether when this duly certified copy of the will probated in California, was filed, the letters before granted to Augustine were properly revoked.

And secondly, if revoked, what was the proper course for the Orphans' Court to pursue in the new appointment.

Dalrymple, Adm'r, *et al. vs.* Gamble.

The answer to the first question depends upon secs. 36 and 327 of Art. 93 of the Code. Sec. 36 is explicit in saying that if a will is filed and the executor therein named shall apply within 30 days after the filing, for letters testamentary, they *shall* be granted, and the granting of such letters shall operate as a revocation of letters of administration previously granted. Under those circumstances the Orphans' Court would have no discretion in the matter. But the law is silent as to what shall be done when there is no executor named, although a will is filed. This section 36 makes no distinction between a foreign and a domestic will, and we can see no reason why any distinction should be made, and when we take into consideration sec. 327, we think none should be made. The will in this case is a foreign will, and professes to dispose of all the personal property, but it appoints no executor, and it is not a case therefore where the Orphans' Court are compelled to revoke. But the whole policy of our testamentary system is to commit administration to the hands of those most interested in the property. Had a will, like the one in this case, been filed before any administration had been granted, the Orphans' Court would surely have granted letters *c. t. a.* and not the ordinary letters of administration. But the power of the Orphans' Court to revoke letters improvidently granted is unquestioned. We can see no reason why that Court should not have *the discretion* to revoke letters previously granted, and grant new letters *c. t. a.* upon the discovery of a will. The Orphans' Court by our Act is given power "to administer justice in all matters relative to the affairs of deceased persons," (sec. 230 of Art. 93.) Under this section that Court would have the power, if they thought justice to the affairs of the deceased required it, to revoke and re-appoint.

The power to administer justice would be seriously impaired if that Court possessed no power or discretion to

revoke letters that it had previously granted upon a mistaken state of facts. *Raborg's Adm'x vs. Hammond,* 2 *H. & G.,* 42. It must be borne in mind that the authority conferred by letters testamentary is different from that conferred by letters of administration. The one directs distribution according to the will, and the other according to our Statute of Distributions.

But an argument has been addressed to the Court by the appellants against this revocation upon the ground that this is an ancillary administration only. But we fail to see the force of this objection.

It appears from the record that there was an administrator appointed in California, the domicil of the testator, and the administration here in Maryland is ancillary to that in California. But the duties of an ancillary administrator, *c. t. a.,* and an ordinary administrator, *c. t. a.,* are precisely the same with one exception, and that exception is this, that in the case of an ancillary administrator, *c. t. a.,* it is a matter of discretion with the Orphans' Court to direct distribution to be made by the ancillary administrator or to order and direct him to transmit the assets to the home administrator to be distributed by him there. Their duties as to the payment of the debts of the testator are the same. The California creditors have the same right to prove their debts against an ancillary administrator *c. t. a.,* here, that they have against the principal administrator there. We are speaking of a case where there is a will. The law of the domicil governs the distribution in case of intestacy. *Corrie's Case,* 2 *Bland,* 488; *Cassilly vs. Meyer,* 4 *Md.,* 1; *Williams vs. Williams,* 5 *Md.,* 467.

There are some general principles underlying our testamentary system that should be kept in view. One of these principles is, that the system has aimed to commit administration to the hands of those most interested in the estate. The Courts have gone so far in this line as to

decide, that a widow who by an ante-nuptial agreement had no interest in her husband's estate, had no right to administer although the statute gives her the right by express words.   When therefore it appears on the face of the will before the Court, that the next of kin have no interest in the property, the care and custody of it should, as far as the law permits, be in the hands of those most interested in it.

It may turn out eventually that the appellants are correct in their contention, and that the will may be shown to be inoperative, or not affecting the Maryland property. But the factum of the will is conceded, and we must deal with it now as with any other well executed will.

Nor can we perceive any legal obligation upon the Orphans' Court to await the result of an equity suit instituted by the appellants themselves, before they proceeded to revoke.   If the Orphans' Court possessed exclusive jurisdiction to act in the premises, that could not be taken away by the institution of a suit in another Court.

If they possessed the power and authority to act at all, the time when they should act, must be in their discretion.

We do not think that in every case where a will is filed after letters of administration are granted (except in the special case provided for in sec. 36 of Art 93,) that the Orphans' Court is obliged to revoke such letters.   We can well suppose a case where it would be useless, as for example where the *legatees*, and the *distributees* would be the same.   But upon the whole case we think it a matter within the discretion of the Orphans' Court, and with that discretion we see in this case no sufficient reason to interfere.

But the question next arises what was the proper course for the Court to pursue after the revocation of his letters.

The 34th sec. of Art. 93, of the Code, regulates the appointment of administrators *c. t. a.*, and provides that the residuary legatee shall be preferred to all except the widow.    But in this case there is no residuary legatee that claims the administration, and no widow, and under the decision of *Georgetown College vs. Browne*, 34 *Md.*, 450, the next of kin, to wit, the brother or sisters of Edwin would unquestionably be entitled to such letters, unless by their own act they have waived or forfeited their right.

The law regulating the appointment will be found in sections 30, 31, and 33 of Art. 93 of the Code.    These sections make it necessary that brothers or sisters should be summoned or notified, and if they decline or refuse to appear, and the creditors or more remote collaterals *do not themselves apply*, administration may be granted in the discretion of the Court.

Now the brothers and sisters were summoned into the Orphans' Court, and clearly notified by the petition filed by Mrs. Hatch, (now Gamble,) that a revocation of the letters granted to A. J. Dalrymple, and the appointment of an administrator *c. t. a.* was asked for.    This petition was filed as far back as 1883, and this petition was answered by the administrator.    Other papers were filed in the Orphans' Court directing the attention of the brothers and sisters, (who were all summoned and in Court by counsel) to the object of the petitioners, to wit : to have the letters of administration revoked and an administrator *c. t. a.* appointed.    They contested the revocation of the letters, but no where claim or assert their right to letters *c. t. a.*    In that particular they stood as if they had not appeared.    The law only provides that they should be notified, and does not require them to appear or answer, except, if they desire the administration, to say so.    It does not require any renunciation either formal or informal of their right, but requires them to assert their claim if they wish to prefer any.    They being so notified and in Court, and failing to make any claim to the administration

*c. t. a.*, and no other relative or creditor applying, the grant of letters then rested in the discretion of the Court, and they appointed the appellant, Augustine, and J. Southgate Lemon. It is upon this ground alone that the Court had the right to make such appointment. Mrs. Gamble had no right or power to delegate her attorney to administer in her place, even if she had the right herself as residuary legatee. But she had the right as a claimant under the will to apply to the Court to revoke the former letters and grant the new ones. Nor was the contention of the appellants that the letters should not be revoked inconsistent with a claim on their part, that if revoked, they, the next of kin, claimed the letters *c. t. a.*

But they stood mute on the question of who should be the administrator *c. t. a.*, and declined and refused to claim it. They might in urging their view that the administration should not be revoked, have asserted their claim to the letters *c. t. a.*, *if* the former letters should be revoked; but failing so to do they must be regarded as declining it, and the matter then is in the discretion of the Orphans' Court.

An argument against this appointment has been made, based on the Act of 1874, ch. 483, sec. 104. This section after giving foreign executors certain rights as to public stocks, but saying that these rights should not oust our Orphans' Courts of their power to appoint, by way of a proviso, says: " and provided, further, that administration shall not be granted to any one in this State except the next of kin, residuary legatee or a creditor."

But we hardly think it was the intention to make any such change, and that the real object of the Legislature was to say that such letters should be granted to those who by existing law were entitled, and not to take away all discretion from the Orphans' Court when the legatee and next of kin, and creditor had all declined, or had made no claim. In any respect the Act of 1874, has no bearing on the case.

It is undoubtedly true, as contended by the appellants that no one has the right to be heard before the Orphans' Court, or indeed any other Court, upon a matter in which he has no interest. But this rule does not extend further than to the establishment of a *prima facie* case of interest; when that is once established it gives the party the right to be heard.

The legatee Mrs. Gamble, by the production of the will certainly acquired the right to be heard upon it, and to take all the necessary steps for the preservation of the property she supposes passes to her under it.

The order of the Orphans' Court must be affirmed, but as the case was not free from doubt, the costs will be paid out of the estate of William H. Dalrymple.

*Order affirmed.*

(Decided 4th January, 1887.)


After the delivery of the foregoing opinion, a motion was made by the appellants for a re-argument of the case, and various reasons were urged in support of the motion.

STONE, J., delivered the opinion of the Court on the motion.

We have examined the reasons filed by the appellants for a re-argument of this case, with the care which the importance of the case to the parties, and the strong presentation of the reasons, required.

First as to the *power* of the Orphans' Court to revoke the letters previously granted. It must be conceded that where a domestic will disposes of the whole personal estate of the testator, but appoints no executor, that letters *c. t. a.*, are the proper letters to grant. No Orphans' Court would hesitate, if they had official knowledge of such a will *before* granting letters, to grant letters *c. t. a.* If the Orphans' Court granted the ordinary letters of administra-

tion in ignorance of the existence of the will, they would be acting under a mistake of fact which they would have the right to correct. The letters in such a case would be improvidently granted.

In *Raborg vs. Hammond*, 2 *H. & G.*, 42, referred to in the opinion of the Court, the Court said:

"If letters of administration have been improvidently granted, or have been obtained by fraud or mistake, they may be revoked."

The Court then goes on to say that it had been argued that the Orphans' Court had no such power, because not *expressly* given. But the Court said that the power to revoke was necessarily inherent in the Orphans' Court, and a part of the essence of the power delegated to them of granting administration.

So in *Montgomery vs. Williamson*, 37 *Md.*, 421, this Court decided that the Orphans' Court had the power to rescind an order of ratification of a sale upon the ground of mistake. So in the *Estate of Stratton*, 46 *Md.*, 551, this Court decided that the Orphans' Court had the right to review and change an administration account that it had previously passed.

The argument was made in all these cases, that no *express* authority could be found for the Orphans' Court's action. But this Court proceeded upon the principle that the Orphans' Court had the power to correct its own action, when based upon a mistake. These decisions would clearly sustain the power of the Orphans' Court, to revoke letters of administration upon filing a domestic will, but it is argued that the case is different with a foreign will.

It is true that section 36 of Art. 93, of the Code, speaks of a will "proved according to law," but the 324th section of same Article provides, that a copy of the record of any will, which the laws of the State or country where made, require to be recorded, shall be sufficient evidence to prove such will in any Court in this State. The 327th

section, provides that a person interested may procure a copy of a foreign will, and have it recorded, and that it shall be the duty of the register to record the same, as other wills admitted to probate in his office.

Now we can see no reason why the law should provide that a copy of a foreign will should be, at the request of a person interested, recorded in the office of the Register of Wills, except as a guide and direction to the Orphans' Court, both in the granting of letters, and the distribution and settlement of the estate. It seems to us that the foreign is placed upon the same footing as the domestic will, as to the grant of letters, when duly filed, &c., and that if the Orphans' Court have the power to revoke in the one case, they have in the other. It will be observed that by the 324th sec. of Art. 93, a copy of the foreign will is made *evidence* in all the Courts of this State, when authenticated as that section requires. This section relates to the proof of such will only.

But the law contained in section 327, was passed long afterwards. This latter section after providing that a copy of such foreign will, shall be recorded in the office of the register as other wills are, goes on to provide that a copy of such copy shall be admitted in evidence in all the Courts of the State, whenever the title to any property given by it shall be in question, with the same force and effect as if the original will had been admitted to probate in this State. The legatee or devisee under such will, in all actions at law or in equity, stands upon the same footing as if the original will had been admitted to probate in the State. We can hardly think it a proper construction of that statute to say that while the copy of the foreign will so recorded, shall have the same force and effect in all the other Courts of the State, that a domestic will has, that it shall not have that effect in the Orphans' Court. The copy of the foreign will is certainly a controlling guide to the Orphans' Court in the distribution of the estate, and

Dalrymple, Adm'r, *et al. vs.* Gamble.

we cannot perceive why it should not at least be some guide in the granting of the letters, which is the first step taken towards the distribution.

This 327th sec. says that "any person who may be interested in any devise or bequest in any will made in any other State, may, &c.," and was evidently principally intended for the benefit of legatees and devisees. When the foreign will is so brought before them, the Orphans' Court must see and know who are the legatees. Among the expressly enumerated powers of the Orphans' Court (sec. 230,) is the power to " secure the rights of orphans and legatees." The rights of legatees may be measurably affected at least, by placing the property bequeathed to them by the will, in adverse or hostile hands.

We see therefore, taking the whole law on the subject into consideration, no reason why a foreign will, authenticated according to the statute, should not stand upon the same footing as a domestic will, in the granting of letters *c. t. a.*

It is also insisted that the discretion of the Orphans' Court as to the revocation exercised in this case, is a legal and not a capricious discretion. To this proposition we fully accede. The power of revocation of letters of administration is not an arbitrary or capricious power, but only to be exercised upon a state of facts, which would warrant it.

In the infinite variety of circumstances attending the disposal of property by will, it would be impossible to lay down an unbending rule that the Orphans' Court must follow in all cases.

We cannot undertake now to define by any means, the limits of their discretion, (if indeed it is definable) but it is enough for us to say, that we think this case shows no such manifest mistake in fact, or error in law, that would authorize us to interfere.

Believing, as we do, that the Orphans' Court had the power, either to grant or to refuse the petition as to the

revocation, the error of their action must be made apparent to us, before we would interfere with their decision. In this case it is not, and the motion for re-argument must be overruled.

*Motion overruled.*

(Decided 18th February, 1887.)