# MARY B. BURGESS

## *vs.*

# THOMAS T. BOSWELL, ADMINISTRATOR.

*Letters of Administration—Time of Granting—Mistake as to Intestacy—Petition for Revocation—When to be Filed.*

The provision of Code, art. 93, sec. 16, that "no such administration shall be granted until twenty days after the death of the supposed intestate, and at least seven days after application therefor," applies only to cases of "supposed" intestacy, and does not apply when the intestacy is notorious, or has been proved to the satisfaction of the orphans' court.          p. 677

Where the dying intestate is not notorious, and there is no proof of intestacy, the orphans' court has no authority to grant letters within the time limited by Code, art. 93, sec. 16.   p. 678

The duties of an administrator *pendente lite* are not coextensive with those of an ordinary administrator; he cannot make distribution, and his letters are revoked by the granting of letters testamentary or of administration.          p. 679

Where the orphans' court grants ordinary letters of administration in ignorance of the existence of a paper purporting to be a will, which is subsequently filed in that court, the court should, on discovering the mistake, revoke the letters as improvidently granted.          pp. 678-680

An application for revocation of letters of administration erroneously granted must be filed within the time, after knowledge of the order granting them, that would be required to deprive an executor of his right to letters testamentary.   p. 680

Where letters of administration were granted on November 9th, on November 15th an alleged will was filed, on November 29th notice of a caveat thereto was filed, and on January 27th, no caveat having been filed, a petition, by the person named as executor in such will, to revoke the letters as improvidently granted, was filed, *held* that the petition was in time, the alleged

will not having been admitted to probate, and the time for the issue of letters testamentary thereunder having consequently not expired.　　　　　**pp. 680, 681**

*Decided January 10th, 1922.*

Appeal from the Orphans' Court of Baltimore City.

Petition by Mary B. Burgess for the revocation of letters of administration granted to Thomas T. Boswell on the estate of Nannie R. Boswell, deceased. From an order dismissing the petition, petitioner appeals. Reversed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER, and OFFUTT, JJ.

*Arthur W. Machen, Jr.,* and *Raymond S. Williams,* with whom were *Hershey, Machen, Donaldson & Williams* on the brief, for the appellant.

*Richard B. Tippett,* with whom were *Richard B. Tippett & Son* on the brief, for the appellee.

THOMAS, J., delivered the opinion of the Court.

This appeal is from an order of the Orphans' Court of Baltimore City dismissing the petition of the appellant to have the letters of administration on her sister's estate granted to the appellee revoked.

Nannie R. Boswell, of Baltimore City, died on the 29th of October, 1920, leaving as her only heirs at law and next of kin a sister, Mrs. Mary B. Burgess, of Baltimore City, and three brothers, namely, Thomas T. Boswell, of Baltimore City, John L. Boswell, of Columbus, Ohio, and Henry H. Boswell, of Buffalo, New York. For a number of years prior to her death she made her home with Mr. and Mrs. Burgess. The two sisters lived together apparently upon the most intimate and friendly terms, and Mrs. Burgess was

familiar with the decedent's personal and business affairs, and assisted her in the management of them. John L. Boswell, who, it seems, had been unfortunate in business matters, came to see her occasionally, while her brother Henry visited her only at long intervals. Thomas T. Boswell, the other brother, was actively engaged in business and a man of means, but, according to the evidence in the case, he contributed to her support and was very kind to and considerate of her during the last months of her life.

Miss Boswell died at the Woman's Hospital, as we have said, on the 29th of October, 1920, and Mrs. Burgess immediately notified her brothers, telegraphing John L. and Henry, of her death and the time of the funeral. John L. Boswell came to Baltimore to attend the funeral, and stayed with Mr. and Mrs. Burgess at their apartment. He had received from Miss Boswell, on the 6th of October, two sealed letters, one addressed in her handwriting to Mrs. Burgess, and marked "To be opened after my death," and the other addressed to him and endorsed in the same way. The day after the funeral, which took place on the first of November, John L. Boswell gave Mrs. Burgess the letter addressed to her, which was as follows:

"State Sanatorium,
"Frederick County, Md., October 4th, 1920.
"Dear Miss:
"I am making a last request that you give our dear unfortunate brother, John L. Boswell, $1,000 of the money left me by our mother. I would have liked to have done it myself, but would not break my promise to you, but I feel sure you will do it, as we have added enough to make a neat sum for you without it and it will make me happy even in my grave. I also want him to have the large picture of Pa, the other picture of Pa you can have as long as you live, then to go to Johnnie and his family, as it came from them. Lucie's diamond ring you are to have your

lifetime, then I want it to go to Burrell. The ame-
thyst ring to Laura.

"I wish I had some remembrance to leave each of
the boys, but you know I have nothing of value. If
they should want anything that belonged to me, give it
to them. The two watches, Lucie's and mine, I would
leave to Johnnie's two girls if I thought they would
wear them, but supposing they have watches of later
date, you can do with them what you think best.

"I want you to destroy all my letters without read-
ing them, as I have not had an opportunity to do it.

"God only knows how hard it has been to be sepa-
rated from those I love all these precious months,
but I suppose it was one of my crosses.

"May God bless and keep you to the end and then
gather us all together around His throne in Heaven,
is the prayer of your
                    "Loving Sister,
                                "Nannie R. Boswell."

After Mrs. Burgess had read the letter, John L. Boswell
demanded the immediate payment of the $1,000, and she
told him that she would give it to him as soon as she could
straighten up her affairs. He was staying with her at her
apartment, and she states that she was unwell and completely
"broken down" by attentions to her sister during her last
illness; that his demands for the money became each day
more urgent and threatening, and that she finally determined
to go to her mother-in-law's, in Roland Park. She testified
that on the 6th of November, while she was at her mother-
in-law's, she received a telephone call from her brother,
Thomas T. Boswell, and had the following conversation with
him: "He said, 'This is Tommy.' I said, 'How do, Tom-
my; how are you.' He said, 'I am well; how are you.' I
said, 'I am sick.' He said, 'Johnny is in my office and is
down to read me that letter of Nannie's asking you to give
him a thousand dollars; now, what about it.' I said, 'I have
told Johnny I would give him the thousand dollars.' He

Md.]              Opinion of the Court.

said, 'He wants it now.' I said, 'I can't give it to him now; I told him I would give it to him when I straightened out my affairs.' He said, 'He is not going to hang around here until you choose to give it to him.' I said, 'That is all I can do.' He said, 'Is there anything I can do?' I said, 'I have told Johnny he would get it.' He said, 'Don't you give me any of that talk, you are just attempting to keep from giving him that money, and if you don't give it to him right away I am going to see Mr. Tippett at once and I am going to break this will and have the estate divided into four equal parts.' I had to think for a moment to think there were four of us. There were seven of us with my mother and father not so long ago, and when he said that, I knew it was no use to argue with him, and certainly could not do it over the 'phone. I said, 'You can't talk to me like that' and I hung up." She further testified that she was unwell and broken down by having to look after her sister, as she was the only one to do it, and that she stayed at her mother-in-law's until she had partly recovered and thought John had gone home, and that as soon as she felt that she could talk to a lawyer she went down town to consult counsel; that she was finally advised to see Mr. Raymond S. Williams, and he directed her to take her sister's will, which had been executed a number of years before and left in her possession, to the orphans' court, which she did on November 15th, 1920. Prior to the filing of the will, Mrs. Burgess had received two letters from Mr. Tippett, the first of which was dated November 8th, 1920, and informed her that John L. Boswell had been in to see him about her sister's estate, and requested her to call to see him at 3.30 p. m. November 9th. The second was dated November 12th, and stated that he had written her an important note on the 8th and received no response, and that it was important for her to see him "tomorrow, *without fail.*" She also received another letter from Mr. Tippett, dated November 15th, calling her attention to the fact that she had paid no attention to his previous letters, and telling her that letters

of administration had been granted on her sister's estate, and directing her to call at his office and turn over all papers, &c., belonging to the estate. In the meantime, to wit, on the morning of November 9th, Thomas T. Boswell appeared in the orphans' court with Mr. Tippett and applied for letters of administration on Miss Boswell's estate, and letters were granted to him that day. On the 29th of November notice of the caveat to the will was filed. On the 27th of January, 1921, no caveat having been filed, Mrs. Burgess filed in the orphans' court a petition alleging in substance that Thomas T. Boswell knew, before he applied for letters of administration, of the existence of the will; that he intentionally refrained from notifying her of his intention to apply for letters of administration, that he failed to inform the orphans' court of the facts in his possession, and misrepresented the facts to the court, and praying that the letters of administration granted to him be revoked. Thomas T. Boswell answered the petition, denying that Miss Boswell left a will, that he knew of the existence of the alleged will, or that he intentionally refrained from notifying the petitioner of his intention to apply for letters of administration, and alleging that from his conversation with his sister prior to her death he was led to believe that she died intestate, and that letters of administration were applied for by him in good faith and without any misrepresentation on his part.

The evidence to which we have referred was taken at the hearing of the petition. Mr. Boswell's version of the telephone conversation with Mrs. Burgess on the 6th of November differs from hers in one important particular, namely, in respect to a reference to the will. He states positively that he did not refer to a will, and that he did not know there was a paper purporting to be the will of the decedent, but he admits that his brother was in his office at the time and read to him a letter from Miss Boswell requesting Mrs. Burgess to give him $1,000; that he told Mrs. Burgess that, and said to her that if she didn't give John the money at once he would let him go to Mr. Tippett, and that then the matter would

be tied up indefinitely. When asked on cross-examination why Mrs. Burgess was expected to give John $1,000, and why he, "a wealthy and prosperous man," didn't give it to John, he replied that that was the last request of his sister, and when asked if Mrs. Burgess was expected to give it out of her own pocket, he replied: "Mrs. Burgess had the whole estate, she had everything, and it was nothing but bonds and she had the whole thing. More than likely if she had given him the $1,000 I am quite sure that there never would have been any court matter about it. I knew it would have been settled. On my suggestion my brother in Buffalo would have been satisfied for her to have had the balance." When asked if he did not know that the estate had to "go through the orphans' court," he said that he did not know that that was so with every estate, and when asked where the $1,000 was "to come from, from Mrs. Burgess or from the estate," he replied, "I suppose from the proceeds of what she held belonging to her sister." Mr. Boswell further testified to certain conversations he had with Miss Boswell during the summer of 1920, which, he said, led him to believe that she had not made a will; that the reason he took out letters on the morning of the 9th of November was that he was going away that afternoon and was advised by John's attorney to go over and take out letters, and that he told the orphans' court that his sister had died intestate. On cross-examination he said further that he did not, before applying for letters, make any investigation of Miss Boswell's "effects" to find out if she had left a will, that he did not know whether he told the orphans' court that he had not investigated the matter, and that he did not inform the court of the fact that she had lived for nine years with her sister, Mrs. Burgess, and that Mrs. Burgess knew about her affairs.

The will which was filed in the orphans' court, and offered in evidence at the hearing of the appellant's petition, is as follows:

"I, Nannie R. Boswell, being of sound mind, memory and understanding, do hereby make and declare this, my last Will and Testament.

"I do hereby will, devise and bequeath unto my sister, Mary D. Burgess, her heirs and assigns forever, all my estate, both real, personal, or mixed, of whatsoever nature or kind, or wheresoever situate.

"I hereby nominate, constitute and appoint my said sister, Mary B. Burgess, sole executrix of this, my last Will and Testament.

"In witness whereof, I have hereunto set my hand and seal this 16th day of December, A. D. 1911.

"Nannie R. Boswell. (Seal)

"Signed, sealed and declared by the said Nannie R. Boswell in our presence, as and for her last Will and Testament, who, at her request, and in her presence, and in the presence of each other, have subscribed our names as witnesses thereto.

"J. L. Boswell.

"Jas. A. Burgess.

"November 15th, 1920, came Mary B. Burgess and made oath in due form of law that she received this Will from testatrix and retained the same to this time. Knows of no other Will and that the testatrix departed this life October 29, 1920.

"Myer J. Block."

"(Filed November 15, 1920.)"

Section 14 of Article 93 of the Code provides: "Whenever any person shall die intestate, leaving in this State personal estate, letters of administration may forthwith be granted by the orphans' court of the county wherein was the party's mansion house or residence," &c., and section 16 of the same article provides: "It shall be incumbent on the person applying for administration to prove such dying intestate to the satisfaction of the court, unless the same be notorious; and the court may examine such person on oath, touching the time, place and manner of death, and whether or not the party dying left a will; and if such dying intestate is not

proved to the satisfaction of the court, no administration shall
be granted.   No such administration shall be granted until
twenty days after the death of the supposed intestate, and at
least seven days after application therefor." Construing these
sections together, this Court held, in *Williams* v. *Addison,*
93 Md. 41, that the limitation imposed by the last sentence
of section 16 must be confined to cases of *"supposed"* intes-
tacy, and that it does not apply to cases where the intestacy
is notorious or has been proved to the satisfaction of the
orphans' court.   In that case, where the intestacy was con-
ceded, the Court held that letters granted within five days
after decedent's death were not prematurely or improvidently
granted.   In *Jones, Admr.,* v. *Harbaugh,* 93 Md. 274, where
one of the grounds upon which letters of administration were
revoked by the orphans' court was that they had been improv-
idently granted, the Court, after referring to *William* v. *Ad-
dison, supra,* said: "If then the dying intestate was notori-
ous, or was proven to the satisfaction of the court, it had the
power to grant letters within the twenty days, and the mere
fact that they were granted within that time did not make
them invalid."   In the case of *Stouffer* v. *Stouffer,* 110 Md.
368, where the appeal was from an order refusing to grant
the appellant's application for letters of administration on
his brother's estate, this Court held that the appellant was
entitled to letters, but that there was no evidence in the record
to show that the decedent died intestate, and that the orphans'
court had no authority to grant them under such circum-
stances, JUDGE BRISCOE saying: "In this case, while the pe-
titioner alleges that Hiram D. Stouffer, late of Washington
County, departed this life on the 7th day of November, 1908,
intestate in Washington County, there is no proof set out in
the record showing that he died intestate (whether or not he
left a will), or tending to show his intestacy was a notorious
fact, as required by the statute.   It is clear, upon all the
authorities, that in the absence of such proof, and upon the
state of proof before the orphans' court at the date of the
order of the 7th of December, 1908, upon this branch of the

case, no letters of administration could have been granted to anyone by the Orphans' Court of Washington County."

The result of the authorities referred to is that where the dying intestate is notorious, or there is satisfactory proof of intestacy, the orphans' court may grant letters within twenty days, and that the mere fact that they are granted within that time does not render them invalid. But where the dying intestate is not notorious, and there is no proof of intestacy, the orphans' courts have no authority to grant letters within the time limited by section 16 of article 93 of the Code.

In the case at bar the record does not show that the orphans' court in granting the letters of administration acted hastily or imprudently. They were applied for by the brother of the decedent, who was known to be a man of business experience, living in Baltimore City, and who stated to the court that she had died intestate. He did not, so far as the record shows, disclose to the court that the decedent had lived during the last nine years of her life with Mrs. Burgess, the intimate relations existing betwen them, that he had not made an investigation or inquired of Mrs. Burgess to ascertain whether she had left a will, the fact that the decedent had left a written request that Mrs. Burgess should pay her brother John $1,000, or the friction that had occurred between him and Mrs. Burgess because of her failure to turn over $1,000 to John immediately. It is not necessary in this case to weigh the conflicting evidence as to whether anything was said in the telephone conversation between Mr. Boswell and Mrs. Burgess in reference to a will, or to determine whether, under the circumstances, he was justified, from what Miss Boswell said to him, in concluding that she left no will, without making any further investigation. The fact remains that there was filed in the orphans' court, on the 15th of November, by the sister with whom she had made her home during the last nine years of her life, a paper purporting to be her last will and testament. If the orphans' court had been advised of the existence of that paper, it would not have granted the

letters applied for on the 9th of November, but upon the filing of such paper in court, and notice of a caveat, would doubtless have granted letters of administration *pendente lite.* Section 68 of article 93 of the Code provides: "In all cases where the validity of a will is or shall be contested, letters of administration pending such contest may, in the discretion of the orphans' court, be granted to the person named as executor or to the person to whom the largest portion of the personal estate may be bequeathed in such contested will, or to the person who would be entitled to letters of administration by law, in cases of intestacy." The duties of an administrator *pendente lite* are not co-extensive with those of an ordinary administrator. He cannot make distribution, and his letters are revoked by the granting of letters testamentary or of administration. Code, art. 93, sec. 69; *Baldwin* v. *Mitchell,* 86 Md. 379. Having granted the letters to the appellant under a mistake of fact, the power of the orphans' court to revoke them can no longer be questioned. *Raborg* v. *Hammond,* 2 H. & G. 42; *Dalrymple* v. *Gamble,* 66 Md. 298; *Lutz* v. *Mahon,* 80 Md. 233; *Williams* v. *Addison, supra,* In the case of *Dalrymple* v. *Gamble, supra,* this Court said: "If the orphans' Court granted the ordinary letters of administration in ignorance of the existence of the will, they would be acting under a mistake of fact which they would have the right to correct. The letters in such a case would be improvidently granted." See also *Lutz* v. *Mahon, supra.* The same principle must be held to apply where the orphans' court grants ordinary letters of administration in ignorance of the existence of a paper purporting to be a will, which is subsequently filed in that court. It is true, letters of administration *pendente lite* may, in the discretion of the orphans' court, be granted to the appellee under section 68, but, as we have said, such letters are not equivalent to ordinary letters of administration.

We think, upon the facts in this case, that the letters granted to the appellee should have been revoked upon the

ground that they were improvidently granted, and that there was error in the order of the orphans' court dismissing the appellant's petition.

It is urged on behalf of the appellee that the petition of the appellant was filed too late, and was for that reason properly dismissed. He relies upon the case of *Stanley* v. *Safe Dep. & T. Co.,* 88 Md. 401, where a petition was filed to rescind and set aside the order admitting the will to probate, and where this Court said: "The statute (article 5, section 60, of the Code) still limits the time within which appeals can be taken from orders and decrees of the orphans' court to thirty days and it was incumbent on the appellants to file their petition within that time after knowledge of the fact that the will had been admitted to probate, or at least to have shown some sufficient reason for not doing so, which they utterly failed to do." But in the case of *Edwards* v. *Bruce,* 8 Md. 393, the Court refused to adopt the contention that an application for revocation of letters of administration erroneously granted must be filed within the same period, after knowledge of the order granting them, as would be allowed for an appeal, and held that the true rule is that the petition must be filed within the time, after knowledge of the order, that would be required to deprive an executor of his letters testamentary, the Court saying: "We think the principle of analogy should apply in the present case, but it applies with more propriety to the time provided by law within which an original application for letters is to be made than to the time for taking an appeal." The same rule was applied in *Stocksdale* v. *Conaway,* 14 Md. 99. See also *Redgrave* v. *Redgrave,* 38 Md. 93; *Wilcoxon* v. *Reese,* 63 Md. 542. Section 43 of article 93 of the Code provides: "If there be only one executor, and he shall have been present at the authentication or probate of the will, and shall not within thirty days thereafter file the bond as aforesaid, or procure an attested copy under seal as aforesaid, for the purpose of taking out letters in another county, letters of administration with the

copy of the will annexed may be granted by the orphans' court of the county wherein was the probate or authentication, to such person as they might be granted in case of intestacy," &c.   In this case the will had not been admitted to probate, and it is clear that under the rule stated in *Edwards* v. *Bruce, supra,* the petition of the appellant cannot be said to have been filed too late.   See also *Wheeler* v. *Stifler,* 82 Md. 648.

> *Order reversed, with costs to the appellant and case remanded.*