# Frank S. Bernhart et al., Trading as Bernhart & Koch, Plffs. in Err., v. Agnes Mitchell.

Where a wife claiming as her own, in sheriff's interpleader, personal property taken in execution by her husband's creditors as his property, relies for her title on desertion by her husband and her subsequent acquisition of the property under the act of May 4, 1855, in course of the trade in which she engages, the question of desertion is one of fact for the jury.

Property acquired in carrying on a business by a married woman, whose husband neglects or refuses to provide for her, is her own, under the act of 1855, and is not liable to execution for her husband's debts, although the basis of the credit upon which she commenced business was a policy of insurance on her husband's life assigned by him to her creditor, she paying the premiums out of the business; and although she used property belonging to the husband in the conduct of the business.

(Argued March 1, 1887. Decided March 14, 1887.)

July Term, 1886, No. 57, E. D., before MERCUR, Ch. J., GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. Error to the Common Pleas of Berks County to review a judgment on a verdict for the plaintiff in a feigned issue. Affirmed.

On the 18th of September, 1876, Messrs. Bernhart & Koch obtained judgment against David Mitchell for $942.55. This judgment was revived on the 23d of August, 1884, for $1,378.-48; whereupon, on the 19th of August, 1885, execution issued, and the sheriff levied upon the personal property in question in this case.

When this levy was made Agnes Mitchell, the wife of the defendant, presented her petition to the court, claiming that the property upon which the sheriff had levied, as the property of David Mitchell, was her property and not her husband's. This issue was thereupon framed to determine the ownership.

At the trial before ERMENTROUT, J., it appeared that on August 26, 1876, Mrs. Mitchell procured from Bernhart & Koch a credit to the extent of $300, upon a policy of life insurance owned by her husband, and for that purpose assigned by him to Bernhart & Koch. Under this arrangement she procured flour from time to time as she needed it in carrying on the bakery business, which had formerly been conducted by her husband. About

twelve days after the securing of credit as aforesaid, an execution having been issued against her husband, the sheriff levied upon his personal property.

The husband claimed the benefit of the exemption law, and $300 worth of property was appraised to him. This property remained on the premises and was absorbed in the business which Mrs. Mitchell conducted. Mrs. Mitchell carried on the business in the house of her husband for more than a year, when, in 1878, the house too was sold by the sheriff. She continued the business and the property in question was the accumulations. The premiums on the policy of insurance were paid by Mrs. Mitchell.

The plaintiff offered to prove that about twenty years ago David Mitchell, her husband, contracted the habit of drinking intoxicating liquors; that he persisted in the habit, and that he became so drunken and profligate by reason of his habit of drinking that about the year 1873 he entirely neglected and refused to provide for his wife and family; and from that time, that is to say, from 1873 up to the present time, he had entirely neglected and refused to support his wife and family; to be followed with proof that Agnes Mitchell, the plaintiff, from 1873 up to the present time, had solely, exclusively, without any assistance or help from her said husband, David Mitchell, supported herself and family by her own earnings; and also to be followed with proof that the property described in the interpleader in this case was purchased by Agnes Mitchell with her own earnings, without any assistance from her husband, during the last nine years.

To this the defendants objected; but the court overruled the objection and admitted the testimony.

There was testimony that the only articles embraced in this issue which were taken by David Mitchell under his exemption were several jars, two kitchen tables and one mirror; and for these articles the jury found against Mrs. Mitchell. All of the other articles Mrs. Mitchell testified were bought by her out of the earnings of the business.

The defendants submitted, *inter alia,* the following points, which were refused by the court:

1. There is no evidence in the case from which the jury can find that David Mitchell, the plaintiff's husband, had either neglected or refused to provide for her, or deserted her, before the

time at which she alleges that she took up and carried on the business in her own name. Therefore, any flour, stock, or other materials purchased by her on credit at the time of her commencing the business in question, and the increase thereof or accretions thereto, became the property of David Mitchell; and it appearing from the plaintiff's own testimony that the property in question is part of the increase of the said business, the jury would have to find for the defendants.

3. Not only does the plaintiff's testimony fail to show that her husband, David Mitchell, neglected or refused to provide for her, or that he deserted her, but on the contrary, the plaintiff, in her own testimony, has clearly stated that her husband had carried on the business up to the time of the sheriff's sale, and that the said business (immediately after the sheriff's sale) had begun to be carried on by her, and that she and her family had always lived and been supported out of the same. The plaintiff, therefore, having been supported out of her husband's business up to the very time of her obtaining credit and commencing the business for herself, it follows that at the time of her obtaining credit and commencing the said business, the conditions contemplated by § 2 of the act of May 4, 1855, did not exist; that she was not then a *femc sole* trader, or invested with the rights of such, and that the flour, stock, and materials so purchased, with all the accretions, became the property of her husband; the plaintiff having also testified that the property embraced in this issue was part of the accretions of the said business, the verdict will have to be for the defendants.

4. The undisputed testimony submitted by the plaintiff herself shows that the business which was commenced after the sheriff's sale and all the accretions of which the plaintiff admits that the property in question was part was so commenced upon credit procured from Bernhart & Koch by the assignment of an insurance policy then owned by David Mitchell, together with the property retained by said David Mitchell under the exemption law. The said business was, therefore, in law the business of the said David Mitchell, and all the profits thereof and accretions thereto, including the property in question, likewise belong to him; and the verdict must be for the defendants.

5. It appearing from the testimony of William N. Coleman, a witness of the plaintiff, and from that of the plaintiff herself, and from the policy of insurance on the life of David Mitchell

with the assignments indorsed thereon, that the basis of the credit upon which the plaintiff commenced the business in question was the said policy of insurance owned by the plaintiff's husband and by him for that purpose assigned to Bernhart & Koch, it follows that the nucleus of the said business, or the original capital with which the plaintiff commenced the same, was furnished by her husband, and the said business and its accretions belong to the husband; and the plaintiff having herself testified that the property in question is part of the accretions of the said business, the verdict will have to be for the defendants.

6. Under all the circumstances of the cause the jury will have to find for the defendants.

Verdict and judgment were for the plaintiff. The assignments of error specified the admission of the testimony referred to, and the refusal of defendants' points.

*William P. Bard* and *Cyrus G. Derr,* for plaintiffs in error. —Evidence to prove the wife's title must be clear and satisfactory, clear and full of proof, clear and unequivocal; it must exclude reasonable suspicion that the property was the husband's. Tripner v. Abrahams, 47 Pa. 228; Baringer v. Stiver, 49 Pa. 129; Flick v. Devries, 50 Pa. 266; Curry v. Bott, 53 Pa. 400.

The property of a husband is not to be covered up or withheld from creditors upon equivocal, suspicious, or doubtful evidence of a wife's right to it. The family relation is such and the probabilities of ownership so great, on the part of the husband, that a plain and satisfactory case should be made out before the wife can be permitted to hold property against honest creditors. Earl v. Champion, 65 Pa. 194.

When a creditor seizes property in the possession of a husband, for his debt, the presumption is that it belongs to him and not to the wife; and this is a violent one, and is adhered to for the purpose of protecting creditors. If the wife sets up a claim to it as against the husband's creditors, she must show that it is hers; the burden of proof is upon her, and the evidence must be clear and satisfactory. Kingsbury v. Davidson, 112 Pa. 383, 4 Atl. 33.

Where a wife claims property as against her husband's creditors she must show affirmatively, by clear and full proof, that she paid for it with her own separate funds. She must make it clearly appear that the means of acquisition were her own, in-

dependently of her husband. It was not the intention of the legislature to dispense with the presumption which ordinarily and of necessity arises in favor of creditors, in transactions between husband and wife affecting the ownership of property in the wife's name. Leinbach v. Templin, 105 Pa. 527.

*C. G. Reber, J. Howard Jacobs,* and *H. Willis Bland,* for defendant in error.—A *feme sole* trader, although in fact married, is in law as capable and free as though she was sole in fact.

By the act of February 22, 1718, § 1, 1 Sm. Laws, 99, 1 Purdon's Digest, 801, "Where any mariners or others are gone, or hereafter shall go, to sea, leaving their wives at shopkeeping or to work for their livelihood at any other trade in this province, all such wives shall be deemed, adjudged and taken, and are hereby declared to be, as *feme sole* traders."

So, by the custom of London, a *feme covert* may act as sole in the way of trade, if she buys and sells in trade for herself, with which her husband does not intermeddle. Cro. Car. 69.

So it shall be if the husband formerly used the same trade, but at the time of the contract is a soldier beyond the sea, and does not intermeddle. Id.

By the custom of London, and in some states by virtue of statutes, a married woman may be authorized to carry on trade as a *feme sole.* 2 Bouvier, Inst. p. 85.

A *feme sole* merchant is defined by Jacob (Law Dictionary) to be "a married woman who, by the custom of London, trades on her own account independently of her husband."

It is said in 2 Bouvier's Institutes, bk. 4, 274, § 3999, that "a married woman may also acquire a separate property by becoming the sole dealer and trader, by permission of her husband, even without deed; in this case she becomes entitled to all her earnings as her separate estate."

And, if a husband should desert his wife, and by aid of her friends she should be enabled to carry on a separate trade, her earnings in such trade will be protected in equity from the claims of his creditors. Cecil v. Juxon, 1 Atk. 278; Lamphir v. Creed, 8 Ves. Jr. 599.

The act of assembly gives a *feme sole* trader a capacity of contracting debts and being sued for them, not only touching matters of her trade, but for the maintenance of herself and chil-

dren; she is placed upon a different footing from a *feme sole* trader in London, and a much better one. Burke v. Winkle, 2 Serg. & R. 190.

A married woman who is a *feme sole* trader can, in Pennsylvania, maintain an action in her own name, for a distributive share of her ancestor's estate. Valentine v. Ford, 2 Browne (Pa.) 193.

Under the custom of London the husband must, for conformity, be joined in legal proceedings. Comyn's Digest, title, *Feme Sole Merchant.*

A married woman can be invested with the capacities of a *feme sole* trader under the acts of 1718 and 1855, without having been so decreed under the 4th section of the act of 1855. Black v. Tricker, 59 Pa. 13.

The act of May 4, 1855, § 2 (P. L. 430), 1 Purdon's Digest, 801, extends the powers and immunities of a *feme sole* trader to the wives of drunken and profligate husbands, and husbands who have deserted their wives.

"Whensoever any husband, from drunkenness, profligacy, or other cause, shall neglect or refuse to provide for his wife, or shall desert her, she shall have all the rights and privileges secured to a *feme sole* trader, under the act of February 22, 1718, . . . and be subject as therein provided; and her property, real and personal, howsoever acquired, shall be subject to her free and absolute disposal during life, or by will, without any liability to be interfered with or obtained by such husband; and in case of her intestacy shall go to her next of kin, as if he were previously dead."

The section was designed to suspend the marital rights of the husband, as a consequence of the acts enumerated, and at the same time to relieve the wife from her marital disabilities. It was intended to put her on a footing where she could acquire and exercise dominion over property, to sue and defend; and when the act declares that property acquired under the circumstances described, the proof of or establishment of those circumstances is surely all that is required in this as in the other act. Black v. Tricker, 59 Pa. 17.

A *feme sole* trader, having capital and tools of her own, may even employ her husband to superintend the business, and have the benefit of his skill and labor, and the additional property produced thereby belongs to her, and cannot be levied upon by

his creditors. Gibbs & S. Mfg. Co. v. Goe, 1 Pennyp. 238; Rush v. Vought, 55 Pa. 437, 93 Am. Dec. 769; Welch v. Kline, 57 Pa. 428.

The conduct of the defendants in dealing for years with the plaintiff as if the property were hers estops them to deny it.

Where one, by his words or conduct, wilfully causes another to believe in the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time. Pickard v. Sears, 6 Ad. & El. 469.

Where an act is done or a statement made by a party, the truth or efficacy of which it would be a fraud on his part to controvert or impair, the character of an estoppel shall be given to what otherwise would be mere matter of evidence. It is not necessary that the party against whom an estoppel is alleged should have intended to deceive; it is sufficient if he intended that his conduct should induce another to act upon it, and the other, relying upon it, did so act. Bidwell v. Pittsburgh, 85 Pa. 417, 27 Am. Rep. 662; Bispham, Eq. § 290.

Mrs. Mitchell had a perfect right to use any property of David Mitchell to start in business for herself. The law recognizes her reasonable right to do that.

The act of 1718 (1 Purdon's Digest, 801, ed. 1885) contemplates that the wife shall have been started in business by the husband and that he shall have furnished the capital. In the state of the law of married women in 1718, the stock of goods in a shop or store of a married woman living with her husband would have been the property of the husband. The act contemplates a business of shopkeeping existing at the time the husband goes to sea, and provides that:

"Where any mariners, or others, are gone, or hereafter shall go, to sea, leaving their wives at shopkeeping, . . . all such wives shall be deemed, adjudged, and taken, and are hereby declared to be, as *feme sole* traders."

We cite generally upon the proposition that the property in controversy is, under the facts of this case, the property of Mrs. Mitchell. Act February 22, 1718, 1 Purdon's Digest, 801; Act May 4, 1855, 1 Purdon's Digest, 801; Ellison v. Anderson, 110 Pa. 486, 1 Atl. 539; Black v. Tricker, 59 Pa. 13; King v. Thompson, 87 Pa. 365, 30 Am. Rep. 364; Elsey v. McDaniel, 95 Pa. 472; Orrell v. Van Gorder, 96 Pa. 180.

PER CURIAM:

There is no error in the answers to the points submitted, nor in the admission of evidence. Whether the husband had neglected or refused to provide for his wife was a question of fact. The evidence that he had done so for a great length of time was amply sufficient to submit to the jury. It tended to prove not only that he persisted in not supporting his wife and his children, but that she actually supported and provided for him. It was well submitted to the jury.

Judgment affirmed.