JOHN H. LUTZ AND JOHN B. McGRAW *vs.* MARY F. MAHAN AND OTHERS.

*Revocation of Letters of Administration—Renunciation—False Statement in Judicial Proceedings.*

Letters of administration were granted to a son of an intestate upon his *ex-parte* application and statement that there was no other son. There was, in fact, an elder son and two daughters, but no widow of the intestate. *Held*, that the letters so granted should be revoked, and the Orphans' Court should proceed as if this administration had never taken place.

A voluntary renunciation of the right to administer, once made, cannot afterwards be withdrawn.

When a judicial act has been obtained by fraudulent means, the Court must condemn the means and annul the result obtained by them. It will never speculate as to whether the same result may not be reached again under different circumstances.

Appeal from the Orphans' Court of Baltimore City. The case is stated in the opinion of the Court. One of the orders appealed from revoked the letters of administration granted to George W. Lutz and John B. McGraw upon the estate of Valentine Lutz, because the Court found that the representation made at the time the letters were obtained, to the effect that George W. Lutz was the only son and enti-

tĺed to the administration, and that he desired to associate John B. McGraw with him, was not a correct statement, as John W. Lutz was equally entitled to administration and should have been notified as required by Code, Art. 93, sec. 31. The other order appealed from dismissed the petition of John W. Lutz asking leave to withdraw his renunciation of the right to administer upon the estate.

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, BRISCOE and BOYD, JJ.

*Lewis Hochheimer,* for the appellants.

*Fielder C. Slingluff,* for the appellees.

BRYAN, J., delivered the opinion of the Court.

The principal question in this case is whether an order is correct which the Orphans' Court of Baltimore City passed for the revocation of certain letters of administration. There were three petitions in the cause; but before we consider their merits we will state some of the prominent facts as they appear in the transcript of the record. Valentine Lutz died intestate on the third day of January, eighteen hundred and ninety-four; on the fifth day of the same month he was buried, and on the sixth letters of administration on his estate were granted to his son, George W. Lutz, and John B. McGraw, who was associated in the administration at the request of the son. The letters were granted by the Register of Wills in the recess of the Orphans' Court. During the preliminary examination before the grant of letters, the Deputy Register asked if George was the only son of the deceased, and Mr. McGraw answered that he was. In point of fact there was another son, who was the elder brother; there were also two sisters, but no widow. It is fair to say that Mr. McGraw had no knowledge of the existence of another son. No notice of the application for letters was given to the other son, or to either of the sisters.

On the twelfth of January John Lutz, the elder son, filed in the Orphans' Court a renunciation of his right to the administration.

There was undue haste in obtaining the letters of administration. No one of the family of the deceased had any knowledge of the application for them, except the one who was appointed administrator. Under the law he had no superior right to his elder brother, and could not have obtained the administration if the facts had been truly stated to the Register of Wills. If any of the other members of the family had been present (as they had a right to be) this misstatement would have been corrected, and the letters would not have been issued. George certainly knew that he was not the only son of his father; but yet he permits the statement to be made in his presence without contradiction. We are not disposed to be severe in our criticism of his conduct; because the evidence shows that he is an ignorant man, totally unacquainted with legal proceedings, and most probably he very imperfectly understood the nature of the business in which he was engaged. His attention may not have been directed to the precise character of the question asked. But after every allowance is made in regard to this matter, the question as to the validity of the letters remains unchanged. They were obtained by means of an untrue statement about an essential fact. Whether the deception was the result of carelessness or mistake, or was intentionally practised, the result is the same. The grant of letters stands condemned as improperly made. The deception operated as a fraud on the Register of Wills, and caused him to render an erroneous judgment. That judgment ought surely to be set aside. It is due to the integrity of legal proceedings that a determination grounded on a falsehood should not be allowed to stand. The adjudications of the law are the declarations of justice, so far as attainable by human methods, and truth is the divinest quality of justice. It would be superfluous to enumerate instances in which Courts have dealt with great severity

with the different forms of fraud. Whether embodied in contracts, deeds, verdicts, decrees or judgments, it is struck down with relentless rigor. It cannot breathe the pure atmosphere of a Court of Justice.

It seems to have been supposed that the renunciation of John Lutz would in some way remedy the infirmity of this grant of administration. By Article 93, section 36 of the Code, the Court is required to proceed as if the person renouncing were not entitled to administer. John Lutz, by his action, excluded himself from all further interest in the administration. His wishes could not confirm an appointment already made, nor control the making of one in the future. The decision of the question rested entirely with the Court. Supposing the appointment of the administrator to have been improperly made, it would be strange indeed if a private person could give it validity by an act *ex post facto*.

It is nothing to the purpose that the same persons may thereafter be reappointed. The fraud is an offence against public justice and against the Court as the organ of the law; and it far transcends in its significance any consideration of the interests of individuals. When a judicial act has been obtained by fraudulent means, the Court must condemn the means and annul the result procured by them. It will never speculate on the question whether the same result may not be reached again under altered circumstances. The law demands not only correct decisions, but also that they should be reached by pure process. It was said in *Davis* v. *Calvert*, 5 Gill and Johnson, 269, that fraud vitiates everything with which it is connected; and Lord Coke said that it avoids all judicial acts, ecclesiastical or temporal.

The two daughters of the deceased joined in a petition against the two administrators for a revocation of these letters. George W. Lutz filed a separate petition against his coadministrator, John B. McGraw praying the same relief. There were other matters stated in these petitions, but we

place our decision entirely on the views which we have
expressed. We think that as the letters ought not to have
been granted, complete justice demands that they should be
revoked; and that the Orphans' Court should disregard
this proceeding entirely, and should grant administration
as if it had never taken place.

John Lutz filed a petition praying that he might be per-
mitted to withdraw his renunciation. The Orphans' Court
dismissed his petition. He does not allege that it was made
through mistake, as was the case in *Thomas* v. *Knighton*,
23 Md. 318; nor does he allege any other sufficient reason.
We think that the question is settled by *Stockdale* v. *Con-
away*, 14 Md. 99.

We will affirm all the orders in the cause.

*Orders affirmed.*

(Decided December 18th, 1894.)