SCHLOSSBERG, Personal Representative of the Estate of Lena S. Jacobs v. SCHLOSSBERG, Personal Representative of the Estate of Albert Schlossberg et al.

[No. 192, September Term, 1974.]

*Decided August 4, 1975.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*J. Darby Bowman, Jr.,* and *Shale D. Stiller,* with whom were *Frank, Bernstein, Conaway & Goldman* on the brief, for appellant.

*Leonard W. Burka* for Gertrude Auerbach, part of appellees. No brief filed on behalf of other appellee.

O'DONNELL, J., delivered the opinion of the Court.

On March 2, 1973, Lena S. Jacobs, a widow without descendants and a resident of Montgomery County, died testate. The record discloses that two brothers, a nephew, several nieces and at least one cousin survived as her heirs.

The appellant Dr. Leonard Schlossberg, her nephew, on March 8, 1973 was granted administrative probate upon her last will and testament dated October 18, 1969, as well as a first codicil thereto dated August 18, 1971, pursuant to Maryland Code (1957, 1969 Repl. Vol.) Art. 93, § 5-301.[1]

---

1. Codified, effective July 1, 1974 in Maryland Code (1974), Estates and Trusts Article § 5-301.

Named in the will as her "executor," he was appointed her personal representative.[2]

In accordance with the requirements of Art. 93, § 5-206,[3] he declared, "under the penalties of perjury" that he had "made a diligent search for a will of the decedent and to the best of [his] knowledge, the will accompanying [the] petition dated Oct. 18, 1969 and codicil dated 8/18/71 is the decedent's latest will and said will came into petitioner's hands in the following manner: 'Removed by decedent's attorney from their vault.' " He further attested therein that "all information is furnished" as required by the provisions of Art. 93, §§ 5-201 and 5-202.[4]

Under the terms of Lena S. Jacobs' last will and testament, all tangible personal property was bequeathed to her niece, Gertrude Auerbach, all her real estate was devised, in equal shares, to her brother Paul Schlossberg and two nieces, Esther Lipson and Gertrude Auerbach; a $5,000.00 bequest was made to a cousin, Rose Harris. The rest, residue and remainder of her estate was left to her nephew Leonard Schlossberg. The codicil filed with the will and dated August 18, 1971, disinherited Gertrude Auerbach and provided that any real property owned at the time of her death be devised in equal shares to her brother Paul and her niece Esther Lipson.

On May 7, 1973 Leonard Schlossberg undertook to "amend" the proceedings by filing a petition for judicial probate under Art. 93, § 5-401,[5] setting out, for the first time, the existence of a second codicil, apparently written by someone other than the decedent, on a single sheet of lined yellow paper, dated January 25, 1973, and purporting to be signed by "Lena Jacobs" and to have been witnessed by

2. Although excused by the terms of the will "from the necessity of giving bond," a bond in the penalty of $15,000.00, the estimated amount of the inheritance taxes in accordance with Code (1957, 1969 Repl. Vol.) Art. 93, § 6-102 (a) now Code (1974), Estates and Trusts Article § 6-102 (b), was ordered posted.

3. Codified, effective July 1, 1974 in Code (1974), Estates and Trusts Article § 5-206.

4. Codified, effective July 1, 1974 in Code (1974), Estates and Trusts Article §§ 5-201 and 5-202.

5. Currently codified in Code (1974), Estates and Trusts Article § 5-401.

Leonard Schlossberg and one, Vie Beasley. This second codicil undertook to cut "out completely Paul Schlossberg and Dora," and stated, after the use of some vulgarity, "I want Laballa [Leonard] to get my properties along with Eskalla [Esther] . . . I don't want to leave a thing in the world to Paul, Dora or Gittal [Gertrude Auerbach]."

The appellant's petition prayed that the order for administrative probate theretofore granted be set aside, that the will and the two codicils be admitted to judicial probate and that he be re-appointed personal representative. In the petition he explained that he had had custody of this second codicil since its execution and that its belated disclosure was due to the fact that Lena had instructed him "to reveal to no one the existence of said codicil for a period of 30 days following the decedent's death." He self-servingly averred that he had "acted in good faith and without any intention to hinder, circumvent or delay the proper administration of this estate in his failure to reveal the existence of the later codicil to the Register of Wills . . . or to his attorneys."

Paul Schlossberg on August 10, 1973 filed a petition and caveat attacking the last will and testament and both codicils. He alleged the full gamut of grounds; he questioned the execution of the documents; charged their procurement by undue influence exercised and practiced by Leonard Schlossberg; asserted that the decedent was of unsound mind and incapable of executing a valid deed or contract; alleged that the will and codicils were procured by fraud exercised and practiced by Leonard Schlossberg; alleged that they did not represent and constitute the last will and testament of the decedent; alleged that the meaning, intent and consequences of the documents were not understood by her; alleged that she did not have a full understanding of memory of those who were the natural objects of her bounty; alleged that she did not have a full understanding or comprehension of the extent and nature of her estate; and alleged that because of advanced age and infirmities of body and mind that the decedent was unable to comprehend the nature and extent of her estate, and to know and appreciate the consequences of her acts. He additionally alleged, in

connection with the second codicil that the decedent at that time was terminally ill from kidney failure, not in control of her faculties and incapable of executing a valid codicil. He prayed that issues be framed and transmitted to a law court.

On September 24, 1973 her brother Albert Schlossberg, unmentioned as a legatee in the will or either codicil, filed a petition to caveat the will and both codicils. Gertrude Auerbach on September 28, 1973 filed her petition attacking only the codicils. They respectively asserted substantially the same grounds as recited in Paul's petition to caveat and also requested issues be sent to a law court.

The timeliness of the caveat filed by Paul Schlossberg went unchallenged but the appellant, as personal representative, relying on the provisions of Art. 93, § 5-207, as then in effect, did file separate motions to dismiss the respective petitions of Albert Schlossberg and Gertrude Auerbach on the ground that they were not timely filed — within six months of the administrative probate of the will and the first codicil and of his appointment as personal representative.

When the petition for judicial probate came before the Circuit Court for Montgomery County, sitting as the Orphans' Court, on June 12, 1973 (before Cahoon, J.) the proceedings were postponed and no hearing thereon has as yet been conducted.

On January 29, 1974 the Circuit Court for Montgomery County, sitting as the Orphans' Court (Mitchell, J.) denied the motions of the appellant to dismiss the caveats filed by Albert Schlossberg and Gertrude Auerbach, holding that "the caveats were timely filed." [6] The order passed, unaccompanied by any opinion did not frame any issues to be transmitted to a court of law.

The appellant filed a timely appeal from that order to the Court of Special Appeals. During the pendency of the appeal in that court one of the caveators, Albert Schlossberg, died

---

6. At the same time, the court sua sponte increased the bond of $15,000.00 previously posted by the personal representative to $203,000.00, the estimated total value of the personalty in the estate. The inventory disclosed no realty.

and Lottie Schlossberg, as the personal representative of his estate, became a substituted party-appellee.

The Court of Special Appeals in *Schlossberg v. Schlossberg,* 22 Md. App. 527, 323 A. 2d 708 (1974) vacated so much of the order of January 29, 1974 by which the Orphans' Court had increased the penalty of the appellant's bond; it dismissed the appeals of the personal representative of the denial of his motions to dismiss the two caveats on the ground that no final order had been passed from which an appeal could be taken.

In reaching the result it did concerning appealability, that court found that our holdings in *Safe Deposit and Trust Company v. Hanna,* 159 Md. 452, 150 A. 870 (1930) "must be narrowly construed" and that the "amendment to article IV, Section 20 to the Constitution of Maryland" coupled with the "legislative changes incident to that amendment have destroyed its relevance to the subject case." 22 Md. App. at 532, 323 A. 2d at 711.

Pointing out that under the constitutional amendment, judges of the Circuit Court of Montgomery County sit "as an Orphans' Court for said County" and exercise the power, authority and jurisdiction possessed and exercised by the Orphans' Court or which may hereafter be prescribed by law, and noting that by virtue of the provisions of Chapter 699 of the Acts of 1966, [codified in Code (1957, 1966 Repl. Vol.) Art. 5, § 25] now codified in Code (1974), Courts and Judicial Proceedings Article § 12-502, the alternative right to appeal from an order of an Orphans' Court to a Circuit Court was inapplicable in Montgomery County, that court, citing Courts and Judicial Proceedings Article § 12-501 which permits an appeal "to the Court of Special Appeals from a final judgment of an orphans' court," reasoned as follows:

> "The basis for the decision announced in *Safe Deposit v. Hanna, supra,* was that, unless jurisdiction had been recognized by the Court of Appeals as to that particular interlocutory or *pro forma* order of the Orphans' Court, no appellate review of the decision would have been accorded to

the litigants. The cited constitutional and statutory changes have had the effect, in Montgomery County, of assuring opportunity for appellate review by this Court of *every* order passed by that circuit court sitting as an orphans' court. Under those altered conditions the decison is without influence here. We hold that the subject case is controlled by the general rule, that 'appeals [from an orphans' court] shall be taken only from final orders or decisions, *those actually settling rights of the parties.' Collins v. Cambridge Hospital,* 158 Md. 112, 116, 148 A. 114, 116." (Emphasis supplied.) 22 Md. App. at 534, 323 A. 2d at 712.

Finding that the conclusion reached was "bolstered by the existence of Maryland Rule 605" the Court of Special Appeals stated:

"We know also that final determination of the rights of all concerned in the subject litigation will result from the trial of the unquestioned caveat filed by Paul Schlossberg. The issues raised by the caveats of Albert and Gertrude will be decided by that determination. See Code Art. 93, § 5-207 (a): *Pleasants v. McKenney,* 109 Md. 277, 291. The appeal from that part of the lower court's order dealing with the timeliness of the petitions of Albert and Gertrude will be dismissed as prematurely filed." 22 Md. App. at 535, 323 A. 2d at 713.

We granted a writ of certiorari to review the issue of appealability since it was contended by the appellant that if the test applied by the Court of Special Appeals requires a final adjudication of the proceedings instituted by a caveator it would have the effect of overruling, throughout the state, our holdings in *Hanna, supra,* and if it is interpreted to be applicable only in Montgomery County a result would be reached which might permit a similar order to be treated as

a "final order" in one county but not treated as such in Montgomery County.[7]

In *Safe Deposit and Trust Company v. Hanna, supra,* a son filed a caveat to the will of his deceased father attacking its execution and alleging mental incapacity and undue influence. The executors in the Orphans' Court contended that he was estopped to file the caveat since he had been a party to and had actual knowledge of proceedings in the Circuit Court construing the decedent's will. The Orphans' Court passed an order, adjudging and decreeing that he was not precluded from caveating the will "and directed that issues requested be sent to the Baltimore City Court to be tried by a jury." The executor appealed to this Court and the appellee filed a motion to dismiss the appeal.

In holding that the order was appealable, this Court in an opinion by Judge W. Mitchell Digges stated:

"The ground upon which this motion is based is that the order of the orphans' court appealed from was not a final order or decree, or in the nature of a final order or decree, and that therefore the appeal was prematurely taken. We are of the opinion that that position cannot be sustained. The order here appealed from *determined the proper parties to the caveat proceeding, determined the issues to be tried, and directed that they be sent to a court of law.* No tribunal other than this court has jurisdiction to review such an order of the orphans' court. In no appeal from the result of a trial, in a court of law, of the issues transmitted from the orphans' court, could this question be here reviewed. It could form no part of the record in the lower court. In *Langhirt v. Hicks,* 153 Md. 31, the finding of the orphans' court, from which an appeal was taken, was that 'the caveatrix is not estopped

7. See Maryland Constitution Art. IV, Sec. 20, ratified Nov. 7, 1972 providing that the judges of the Circuit Court for Harford County shall sit as the Orphans' Court. *See also* Ch. 20 Laws of 1975, amending Code (1974), Courts & Judicial Proceedings Article § 12-502.

or barred from prosecuting said caveat and that she is entitled to have the issues of fact raised by her said caveat and the answer thereto, as to the validity and genuineness of the alleged last will and testament of Margaretha Langhirt, deceased, sent to a court of law to be determined by a jury.' In dismissing the appeal this court said: 'It is *not from a final order, or indeed from any effective order*. No doubt another order would have followed, sending issues to a court of law. *From such an order an appeal would lie*. The order passed was nothing more, in effect, *than the opinion of the court. Newell v. Dundalk*, 149 Md. 182.'" (Emphasis supplied.) 159 Md. at 455, 150 A. at 871.

As pointed out in *Hanna, supra*, the order of the Orphans' Court in *Langhirt v. Hicks*, 153 Md. 31, 137 A. 482 (1927) merely declared that "the caveatrix is not estopped or barred from prosecuting said caveat." If that order had included the framing of issues and their transmittal to a lower court the Court stated it would have been appealable. Although in *Langhirt* the appeal was dismissed, the Court noted "that to dismiss the appeal without an expression of the views of the Court would result in another appeal on a similar record with nothing added but the final order" and in remanding the case for further proceedings, stated "what our decision would be if the case was properly before us."

In *Senk v. Mork*, 212 Md. 413, 129 A. 2d 675 (1957), a husband who had the right to elect a renunciation of any bequest made to him under the last will and testament of his wife failed to do so within the time required, but instead filed a caveat to her will. The executrix moved to dismiss his caveat asserting that his failure to file his renunciation barred his right to caveat. The Orphans' Court for Montgomery County denied the petition of the executrix to dismiss the caveat and directed that issues as framed be transmitted to the Circuit Court. In holding that "the right of a caveator to contest the will must, if challenged, be established before issues as to the validity of the will are

determined" and that "[i]t is within the jurisdiction of the Orphans' Court to determine such questions either upon a hearing in that court or by first sending issues pertaining to such questions to a law court for trial" Chief Judge Brune, who handed down the opinion for the Court, noted:

> "In the Orphans Court the executrix' petition to dismiss the husband's petition and caveat was denied and an order was entered on May 31, 1956, directing that the issues be transmitted to the Circuit Court. The appeal is from that order. No question is raised as to its being an appealable order. See *Sykes, Contest of Wills in Maryland,* § 154, page 199; *Little Sisters of the Poor v. Cushing,* 62 Md. 416." 212 Md. at 416, 129 A. 2d at 676.

*See also Zinn v. Imperial Council,* 253 Md. 183, 187-88, 252 A. 2d 76, 79 (1969) and *Safe Deposit and Trust Company v. DeVilbiss,* 128 Md. 182, 185; 97 A. 367, 369 (1916).

The holding in *Hanna, supra,* is not an isolated or atypical case. In *Forsythe v. Baker,* 180 Md. 144, 150, 23 A. 2d 36, 38 (1941), and in *Holland v. Enright,* 167 Md. 604, 608, 175 A. 466, 468 (1934), it was held that once issues are transmitted to a law court the Circuit Court was bound by them and had no power to review the proceedings in the Orphans' Court in respect to them, nor to consider the propriety or sufficiency of the pleadings upon which they were founded, and that "[i]f either party had desired to raise any question as to the form of the issues, the propriety or regularity of the proceeding in which they were framed, or the sufficiency of the pleadings to support them, it should have done so by appealing from the order granting them (*Little Sisters of the Poor v. Cushing,* 62 Md. 416, 421 [(1884)]; Code, art. 5, sec. 64), for it could have been raised in no other way."

Although, as the Court of Special Appeals pointed out, in *Collins v. Cambridge Hospital,* 158 Md. 112, 148 A. 114 (1930), it was therein stated that:

> "While it is true that parties deeming themselves

aggrieved have been given a right of appeal to this court from all orders and decisions by the orphans' court (Code, art. 5, sec. 64), it has always been recognized that the meaning of the statute must be that the appeals shall be taken only from final orders or decisions, those actually settling rights of the parties." 158 Md. at 115-16, 148 A. at 116.

It was the holding of that case that an order of the Orphans' Court merely "determining in the affirmative only the question of jurisdiction in the court to hear the controversy and thereafter decide whether persons applying [to caveat] shall be made parties, is not such a final order."

A distillation of the holdings in all these cases leads to the conclusion that in caveat proceedings once issues have been framed by an Orphans' Court and transmitted to a court of law for trial, such an order is "final" and appealable.

When *Langhirt, Hanna* and *Collins* each visited this Court, the appeals were entered pursuant to Maryland Code (1924) Art. 5, § 64, which read: "From all decrees, orders, decisions and judgments, made by the orphans' court, the party, who may deem himself aggrieved by such decree, order, decision, or judgment, may appeal to the Court of Appeals."

That statute, originally enacted by Ch. 204, § 1 of the Acts of 1818 remained intact governing appeals to this Court from the Orphans' Courts until June 1, 1957 when pursuant to a revision, Art. 5 was repealed and re-enacted. By Ch. 399 of the Laws of 1957 the legislature, in place of Art. 5, § 64 enacted Code (1957) Art. 5, § 9, which read: "Any party may appeal to the Court of Appeals from any decree, order, decision or judgment of an orphans' court." That same Chapter of the Laws of 1957 enacted Code (1957) Art. 5, § 10 governing appeals from decisions of the Orphans' Courts in summary proceedings and requiring upon the filing of notice of intention to appeal a request that the testimony be transcribed.

Effective January 1, 1974 Sections 9 and 10 of Art. 5 "were combined" and enacted as Code (1974), Courts and Judicial

Proceedings Article § 12-501. What was theretofore Art. 5, § 9 now reads: "A party may appeal to the Court of Special Appeals from a final judgment of an orphans' court." The revisor's note to § 12-501 states that "the only changes made are in style."

Our decisions in *Langhirt* and *Hanna* engrafted the word "final" upon the clause "all decrees, orders, decisions and judgments, made by the orphans' court," as set forth in Art. 5, § 64. As we read *Collins* we cannot construe the dictum therein — as apparently did the Court of Special Appeals — as requiring, in caveat proceedings that before such an order can be appealable it must be " 'one which finally settles some disputed right or interest of the parties'," *Brooks v. Sprague*, 157 Md. 160, 164, 145 A. 375, 377 (1929); or be "so far final as to determine and conclude the rights involved in the action, or to deny to the party seeking redress by the appeal the means of further prosecuting or defending his rights and interests in the subject matter of the proceeding." *See In re Buckler Trusts*, 144 Md. 424, 427, 125 A. 177, 178 (1924). We hold that the use of the term "a final judgment" as used in Code (1974), Courts and Judicial Proceedings Article § 12-501 was not intended to overrule or modify our antecedent decisions delineating the nature of orders in caveat cases which are final and appealable. We conclude that our holdings in *Safe Deposit and Trust Company v. Hanna, supra,* are still viable and determinative of the appealability of orders passed by the Orphans' Courts in such caveat proceedings. Thus, the "final judgment" of an Orphans' Court are those judgments, orders, decisions, etc. which, in caveat proceedings, finally determine the proper parties, the issues to be tried and the sending of those issues to a court of law. *See* Code (1974), Courts and Judicial Proceedings Article § 12-101 (f), defining "final judgment." [8]

Nor, as we see it did the amendment to art. IV, Sec. 20 of the Constitution of Maryland and the enactment of Ch. 699

---

8. Because of the nature of such proceedings Maryland Rule 605 a which relates to judgments upon multiple claims, and which the Court of Special Appeals found to "bolster" its conclusion, is inapplicable.

of the Acts of 1966 "destroy [the] relevance" of our holdings in *Hanna* to the case before us.

By ratification of the electorate on November 3, 1964 the Constitution of Maryland was amended to provide that the judges for the Circuit Court for Montgomery County shall sit as the Orphans' Court for that county. A similar amendment ratified by the voters on November 7, 1972 provided that the judges of the Circuit Court for Harford County shall similarly sit as the Orphans' Court for that county. Thus, apart from the remainder of the state where there are separate judges of the Orphans' Court, in Montgomery and Harford Counties, although the Orphans' Court, as a court, continues in existence, the judges of the respective Circuit Courts function as judges of the Orphans' Court. From the final judgments of the Orphans' Court, effective January 1, 1974, appeals are entered to the Court of Special Appeals rather than to this Court as theretofore provided. *See* Code (1974), Courts and Judicial Proceedings Article § 12-501 and § 12-308 (a) (15). See also § 12-308 (b) which provides that, after December 31, 1974 the Court of Special Appeals has "exclusive initial appellate jurisdiction of any *reviewable* judgment, decree, order or other action of a circuit court or an *orphans' court*." (Emphasis supplied.)

By Ch. 399 of the Laws of 1957, Codified as Code (1957) Art. 5, § 25, the legislature created the right to an alternative appeal from "any decree, order, decision, or judgment of an orphans' court." It provided primarily that "[i]nstead of a direct appeal to the Court of Appeals pursuant to [Art. 5] § 9 . . ., any party may appeal to the circuit court for the county or to the Superior Court of Baltimore City." Secondarily it provided that any such appeal to a Circuit Court or to the Superior Court be heard de novo and from the final judgment or determination in that "appellate" court, a further appeal to this Court might be taken. By Ch. 699 of the Laws of 1966, decisions of the Orphans' Court for Montgomery County were excluded from the applicability of the section, and by Ch. 20 of the Laws of 1975 Harford County was excluded from such an optional appeal.

What was formerly Art. 5, § 25, including the Montgomery County exception — was codified in Code (1974), Courts and Judicial Proceedings Article § 12-502 (a), which prior to its amendment by Ch. 2C of the Laws of 1975 read as follows:

> "*In general; exception in Montgomery County.*— *Instead of* a direct appeal to the Court of Special Appeals pursuant to § 12-501, a party *may* appeal to the circuit court for the county or to the Superior Court of Baltimore City from a *final* judgment of an orphans' court. The appeal shall be heard de novo by the appellate court, and it shall give judgment according to the equity of the matter. This subsection does not apply to Montgomery County." (Emphasis supplied.) [9]

Prior to 1957 this Court had exclusive appellate jurisdiction over the "final judgments" of an Orphans' Court in caveat proceedings as delimited by our holdings in *Hanna*. The creation of the right of an alternative optional appeal did not in any way alter the nature of such orders in order that they be final and appealable. Nor did the exemption in 1966 of Montgomery County (and in 1975 of Harford County) from the applicability of the alternate appeal procedure alter the criteria for the appealability of such orders; as far as Montgomery and Harford Counties are concerned the test laid down for the appealability of such orders thus remained precisely what it was, under the standard circumscribed in *Hanna*, prior to the enactment of Art. 5, § 25 in 1957. As we see it the standards for determining the appealability of orders in such caveat proceedings — that they be from "final judgments" of an Orphans' Court — are the same throughout the state, whether the appellant enter his appeal to the Court of Special Appeals under § 12-501 of the Courts and Judicial Proceedings Article or under § 12-502 (a) to the

---

9. The revisor's note states that "the provision does not apply to Montgomery County because that circuit court sits as an orphans' court;" and that "a circuit court judgment cannot be appealed to the same circuit court."

Superior Court of Baltimore City or to one of the Circuit Courts, other than Montgomery and Harford Counties.

It is our conclusion that neither the amendments to article IV, Section 20 of the Constitution of Maryland, nor the enactment of Art. 5, § 25, as now codified in § 12-502 of the Courts and Judicial Proceedings Article, had any effect whatsoever upon the criteria established in *Hanna* for determining, in caveat proceedings, what is a final and appealable order.

The shortcoming of the orders here before us is that they merely determined that the caveats of Albert Schlossberg and Gertrude Auerbach had been "timely filed." Assuming that they are "proper parties" to the caveat proceedings — which does not appear to have been challenged — under our holdings in *Hanna* the orders were not final and thus not appealable, since the Orphans' Court did not frame nor send any issues to a law court for trial. *See Collins v. Cambridge Hospital, supra, Langhirt v. Hicks, supra.* We further observe that there has been no judicial determination that the administrative probate granted the appellant be set aside nor, as prayed by him, that judicial probate be granted. *See* Code (1957, 1969 Repl. Vol. [1973 Cum. Supp.]) Art. 93, § 5-304.

The infirmity of the failure of the Orphans' Court to formulate issues is recognized by the appellant who states, however, that such matters are "purely formal, however, because the issues have already been formed by the pleadings," and that when the Orphans' Court "takes the next step by adding a simple paragraph to [its] order setting forth the issues and directing that they be sent to the law court all the parties will be back in the Court of Special Appeals again." In urging that we pass upon "the only matter of substantive importance" decided by the Orphans' Court the appellant contends that the addition of a formal paragraph setting forth matters already contained in the pleadings should not be the "touchstone of appealability."

Although we must, as did the Court of Special Appeals, hold that the appeals must be dismissed since the orders

passed by the Orphans' Court do not comply with the criteria laid down in *Hanna* — and not upon the reasons set forth by the Court of Special Appeals — we shall, as in *Langhirt v. Hicks*, set forth "what our decision would be if the case were properly before us" since inevitably as the appellant cogently puts it another appeal would revisit the Court of Special Appeals upon the formulation and transmittal of issues to a law court. A similar procedure has been invoked by this Court in *McCann v. McGinnis*, 257 Md. 499, 263 A. 2d 536 (1970); *Millison v. Citizens Nat'l Bk.*, 256 Md. 431, 260 A. 2d 324 (1970); and in *Hogan v. McMahon*, 115 Md. 195, 80 A. 695 (1911).

In place of all the provisions of the prior law relating to a notice to caveat and the caveat procedures, the legislature in a general revision of Article 93 by Ch. 3, Section 1, of the Laws of 1969, codified as Code (1957, 1969 Repl. Vol.) Art. 93, § 5-207, provided as follows:

> "(a) *Filing petition to caveat.* — Whether or not a petition for probate has been filed, a verified petition to caveat a will may be filed at any time *prior to the expiration of six months following an administrative or a judicial probate* (unless caveat proceedings had once been held and finally disposed of).
>
> "(b) *Effect of petition.* — If the petition to caveat is filed before the filing of a petition for probate, or *after administrative probate, it shall have the effect of a request for judicial probate.* If filed after judicial probate the matter shall be reopened and a new proceeding held as if only administrative probate had previously been determined. In either case the provisions of part 4 of this subtitle shall apply." (Emphasis supplied.)

The section was intended to follow the prior law set forth in Art. 93, §§ 379 and 381. But the revision was only in effect for two years when Art. 93, § 5-207 (a) was amended by Ch. 786, Section 1 of the Laws of 1971, effective upon all estates opened after July 1, 1971 and codified in Code (1957, 1969

Repl. Vol. [1973 Cum. Supp.]) of Art. 93, § 5-207,[10] to read as follows:

> "(a) *Filing petition to caveat.* — Whether or not a petition for probate has been filed, a verified petition to caveat a will may be filed at any time *prior to the expiration of six months following the first appointment of a personal representative* under any will, notwithstanding any subsequent judicial probate or appointment of personal representative, provided however if a different will is subsequently offered for probate, a petition to caveat such later offered will may be filed at any time within the later to occur of (i) three months after such later probate, or (ii) six months after the first appointment of a personal representative of any probated will." (Emphasis supplied.)

Art. 93, § 5-304,[11] concerning the finality of action in administrative probate, provided, at the times here pertinent:

> "(a) *Generally.* — Unless a timely request for judicial probate has been filed pursuant to subsection (b) of this section, or unless such a request has been filed pursuant to § 5-402 *within six months of administrative probate,* any action taken therein shall be final and binding as to all interested persons. Except as provided in subsection (b), no defect in a petition or proceeding relating to administrative probate shall affect the probate or the grant of letters.
>
> "(b) *Exceptions.* — An administrative probate may be set aside and a proceeding for judicial probate instituted if, following a request by an interested

---

**10.** Now codified, with the "only changes in style and language" as Code (1974), Estates and Trusts Article § 5-207.

**11.** Now codified, with the "only changes in style and language" as Code (1974), Estates and Trusts Article § 5-304. Code (1957, 1969 Repl. Vol.) Art. 93, § 5-304 providing for a four month period from administrative probate within which a petition for judicial probate may be filed, was changed to six months by Ch. 600 of the Laws of 1970.

person *within eighteen months of the decedent's death,* the court finds that

(1) The proponent of a later offered will, in spite of the exercise of reasonable diligence in efforts to locate any will, *was actually unaware of such will's existence at that time of the prior probate;* or

\* \* \*

(3) There was fraud, material mistake or substantial irregularity in the prior probate proceeding." (Emphasis supplied.)

Thus, after the administrative probate granted on March 8, 1973, there were two methods for obtaining a judicial probate, independent of the appellant's petition for such probate on May 7, 1973 — either by the filing of a petition to caveat pursuant to § 5-207 (b) or pursuant to the provisions of § 5-304 (b). The timeliness of the caveat filed by Paul Schlossberg on August 10, 1973 — well within the six months of the first appointment of the appellant as personal representative — was unchallenged; within the provisions of § 5-207 (b), after administrative probate, it had "the effect of a request for judicial probate."

Upon the timely filing of a request for judicial probate, the "appointment of a personal representative who has been appointed by administrative probate is terminated," although he continues to have "the powers and duties of a special administrator" pending the appointment of a personal representative in a judicial probate proceeding, and may himself be reappointed. Art. 93, § 6-307.[12]

Indeed, as we see it, when the appellant himself petitioned the Orphans' Court on May 7, 1973 for judicial probate, he terminated his own appointment as personal representative which was made upon administrative probate. *See* §§ 5-304, 5-402 (c) and 6-307.

12. Now codified, with changes "in style and language" and divided into three subsections as Code (1974), Estates and Trusts Article § 6-307 (a), (b) and (c).

The appellant's own request for judicial probate, within four months of the administrative probate — without more — had the effect of rendering that action not "final and binding as to all interested parties," independent of the caveat petition filed by Paul Schlossberg.

Although the appellees argue that § 5-304 "is a statutory exception to the time limitation for filing caveats;" as can be seen the section merely fixes a time within which an action taken during administrative probate shall be considered "final and binding."

In conformity with Art. 93, § 5-201 (e) (1),[13] when the appellant filed his petition for administrative probate he was required to set forth "all knowledge or information" with respect to "the will or a copy of the will" and if such exhibit cannot be produced, "a statement of the reasons for such inability" together with the name and address of any person "in whose custody any of such documents may be." Section 5-202 requires that the petition state the reasons "why any information required by § 5-201 cannot be furnished by the petitioner." A "will" is defined in Art. 93, § 1-101 (s) to mean "any written instrument, including a codicil."

When Leonard Schlossberg was granted administrative probate — within six days of the death of the testatrix — he purposely concealed the existence of the second codicil dated thirty-five days before her death, which was in his possession.

In *Lutz v. Mahan*, 80 Md. 233, 30 A. 645 (1894), this Court upheld the revocation of letters of administration which had been obtained by fraudulent means. Three days after the decedent's death letters of administration were granted to George Lutz, the younger son of the decedent and to one McGraw, who was associated with him at his request. In the presence of Lutz, McGraw told the Deputy Register of Wills that George was the *only* son of the decedent. In fact, there

---

13. Now codified in Code (1974), Estates and Trusts Article § 5-201 (e) (1).

was another son and two sisters and no notice of the application for letters was given to any of them.

Noting the "undue haste" in obtaining the letters of administration, the Court pointed out that George Lutz "certainly knew he was not the only son of his father" yet, without contradiction, permitted the statement to be made in his presence by McGraw, and stated:

> "We are not disposed to be severe in our criticism of his [McGraw's] conduct; because the evidence shows that he is an ignorant man, totally unacquainted with legal proceedings, and most probably he very imperfectly understood the nature of the business in which he was engaged. His attention may not have been directed to the precise character of the question asked. But after every allowance is made in regard to this matter, the question as to the validity of the letters remains unchanged. They were obtained by means of an untrue statement about an essential fact. Whether the deception was the result of carelessness or mistake, or was intentionally practised, the result is the same. The grant of letters stands condemned as improperly made. *The deception operated as a fraud on the Register of Wills, and caused him to render an erroneous judgment.* That judgment ought surely to be set aside. It is due to the integrity of legal proceedings that a *determination grounded on a falsehood should not be allowed to stand.* The adjudications of the law are the declarations of justice, so far as attainable by human methods, and truth is the divinest quality of justice. It would be superfluous to enumerate instances in which Courts have dealt with great severity with the different forms of fraud. Whether embodied in contracts, deeds, verdicts, decrees or judgments, it is struck down with relentless rigor. It cannot breathe the pure atmosphere of a Court of Justice." 80 Md. at 235-36, 30 A. at 646. (Emphasis supplied.)

In pointing out that the renunciation by his brother did not "remedy the infirmity of this grant of administration," the Court stated:

> "It is nothing to the purpose that the same persons may thereafter be reappointed. The fraud is an offence against public justice and against the Court as the organ of the law; and it far transcends in its significance any consideration of the interests of individuals. *When a judicial act has been obtained by fraudulent means, the Court must condemn the means and annul the result procured by them.* It will never speculate on the question whether the same result may not be reached again under altered circumstances. The law demands not only correct decisions, but also that they should be reached by pure process. It was said in *Davis v. Calvert*, 5 G. & J. 269, that fraud vitiates everything with which it is connected; and Lord Coke said that it avoids all judicial acts, ecclesiastical or temporal." 80 Md. at 236, 30 A. at 646. (Emphasis supplied.)

It was concluded that "as letters ought not to have been granted, complete justice demands that they should be revoked; and that the Orphans' Court should disregard this proceeding entirely, and should grant administration as if it had never taken place." 80 Md. at 237, 30 A. at 646.

Similarly, in *Watkins v. Barnes*, 203 Md. 518, 102 A. 2d 295 (1954), this Court affirmed an order of an orphans' court revoking the probate of a will and the granting of letters of administration c.t.a. to the decedent's first cousin, once removed, who represented himself that he was the "next of kin" when, in fact, there were first cousins of the half blood who were her "next of kin" — even though the misrepresentation was innocently made.

Judge Delaplaine, who delivered the opinion of the Court, stated:

> "[We] cannot close our eyes to the fact that the Orphans' Court improperly passed orders induced

by appellant's material misrepresentation. When the Register of Wills was asked at the hearing on the petition for revocation whether appellant had told him that he was Mrs. Kreh's only next of kin, he replied: 'Oh, yes. * * * I asked him what possibility there might be of cousins. He said "not to my knowledge." He was very sincere. He said he knew of no other relatives.' The Register of Wills definitely swore that prior to the probate of the will he had no knowledge that there were any other cousins, and that if he had known it, he 'would have suggested somebody should be notified.'

"In view of these facts the Orphans' Court was justified in revoking the order for the probate of the will and the grant of letters." 203 Md. at 523, 102 A. 2d at 298.

Again, in *First Nat'l Bk. v. White*, 239 Md. 289, 211 A. 2d 328 (1965), this Court held that the Orphans' Court should have granted the appellee's petition to revoke the letters testamentary issued to the appellant and the probate of her mother's will where the appellant had failed to notify the appellee of the probate, alleged in the petition for the grant of letters that it was the executor named in the will and that the will had been read to the near relations of the decedent, when in fact the appellant was not the named executor nor had the will been read to the near relations.

There, Judge Marbury, writing for the Court in holding that the letters testamentary and the probate of the will should have been revoked, stated:

"An examination of the will shows that it is completely silent as to who should act as executor in the event Mr. Addicks survived Mrs. Addicks, but died before probate without naming an alternate executor. Had appellee been given an opportunity to appear at the probate hearing, she would have been entitled to assert her right to letters of administration *pendente lite* prior to filing a notice of caveat, or letters of administration

c.t.a. if she preferred not to file a caveat. We hold that appellant's failure to notify appellee, and its allegation in the petition for letters testamentary that it was the executor named in the will, and that the will had been read to the near relations of the decedent thus induced the order admitting the will to probate, deprived appellee of a valuable right to file a caveat prior to probate and to administer the estate. *Watkins v. Barnes,* 203 Md. 518, 102 A. 2d 295; *Lutz v. Mahan,* 80 Md. 233, 30 Atl. 645." 239 Md. at 299, 211 A. 2d at 333.

In *Hayman v. Messick,* 252 Md. 384, 249 A. 2d 695 (1969), the appellant identifying himself as a cousin and with one other, as the only next of kin filed a petition with the Orphans' Court for grant of letters c.t.a. A week later a similar petition was filed by the appellee which identified twelve of the decedent's cousins as her next of kin, including the appellant. The will was admitted to probate and letters were granted to Messick who entered upon his duties. Thereafter, it was stipulated that Hayman, as a first cousin and a next of kin of the decedent, was properly entitled to the grant of letters, and the Orphans' Court then revoked the letters granted Messick and granted them to Hayman. Hayman then filed a petition in which he recited that since the grant of letters to Messick was erroneous his appointment was void *ab initio* and that "all of Messick's acts should be deemed a nullity."

This Court, in an opinion by Judge Singley, in holding that where the appointment of the administrator had been made by the Orphans' Court as a result of a "mistake" and "not because of any fraud or deceit practiced upon it" the revocation of Messick's appointment did not invalidate his acts pursuant to Code (1957, 1967 Repl. Vol.) Art. 93, § 41, stated: "Hayman argues, and we think correctly, that the statutory umbrella protects only the personal representative who acts *according to law,* and not the individual who is guilty of fraud or deceit, citing *Watkins v. Barnes,* 203 Md. 518, 102 A. 2d 295 (1954) and *Lutz v. Mahan,* 80 Md. 233, 30 A. 645 (1894)."

After pointing out that upon the facts the holdings in *Watkins v. Barnes, supra,* and in *Lutz v. Mahan, supra,* were clearly distinguishable it was stated for the Court:

"As it turned out, the court had made a mistake, not because of any fraud or deceit practiced upon it, but because information respecting the degree in which Hayman and Messick were related to Mrs. Slocumb was either not available to the court or, if available, was not accorded proper significance. An orphans' court has the power to revoke a grant of letters improperly made because of a mistaken state of facts. *Watkins v. Barnes, supra, Silverwood v. Farnan,* 180 Md. 15, 22, 22 A. 2d 444, (1941); *Mitchell v. McCormick,* 143 Md. 328, 332, 122 A. 245 (1923); *Dalrymple v. Gamble,* 66 Md. 298, 305, 7 A. 283, 8 A. 468 (1887)." 252 Md. at 390, 249 A. 2d at 698.

Whether the petitioner's misstatement was innocent or deliberate, the probate and grant of letters issued upon such misstatement may be revoked. *See Parshley v. Mott,* 241 Md. 577, 578, 217 A. 2d 300, 301 (1966); *Estate of Soothcage v. King,* 227 Md. 142, 153, 176 A. 2d 221, 227 (1961); *Lederer v. Johannsen,* 124 Md. 453, 460, 92 A. 1035, 1037 (1915). Indeed, where an Orphans' Court grants letters of administration in ignorance of the existence of a paper purporting to be a will which is subsequently filed, that court should, on discovering the mistake, revoke the letters as "improvidently granted." *Burgess v. Boswell,* 139 Md. 669, 679, 116 A. 457, 461 (1922), citing *Lutz v. Mahan, supra,* and *Dalrymple v. Gamble,* 66 Md. 298, 7 A. 683 (1887).

The appellant, pointing out that statutes fixing the period within which one may caveat a will, are not governed by the ordinary statute of limitations, *see* 3 Page, Wills, § 26.46 at 100 (W. Bowe & D. Parker, rev. ed., 1961) and citing *Garrison v. Hill,* 81 Md. 551, 32 A. 191 (1895) (where our predecessors pointed out that the original caveat statute failed to provide any exception for extending the period of time in favor of one who may be under a disability such as

coverture, infancy, etc.) and *Meyer v. Henderson,* 88 Md. 585, 591, 41 A. 1073, 42 A. 241 (1899) (where the language in the statute was held to be "imperative" and that the failure to file within the time prescribed deprived the Orphans' Court of jurisdiction notwithstanding the consent of the parties to the late filing) argues on the authority of 3 Page, Wills, *supra,* § 26.47 at 102, that no such exception can be found — even in cases of fraud — unless **explicitly** provided for in the statute. Our holdings in *Hayman v. Messick, supra,* and in *Lutz v. Mahan, supra,* however are to the contrary.

Although the Orphans' Court of Montgomery County made no finding, as specified in Art. 93, § 5-304 (b) (3) that there was "fraud, material mistake or substantial irregularity" in the appointment of the appellant at the time administrative probate was granted, it is clear, as a matter of law, and implicit in the conclusion reached, that the appellant's confessed conduct, as disclosed when he petitioned for judicial probate, constituted a fraud upon the Register of Wills, which went to the very heart of the probate of the original will together with the first codicil, as well as appellant's appointment as personal representative.

Had the existence of the second codicil, then in the possession of the appellant, been made known to the Register he undoubtedly would not have submitted the first of the two instruments to administrative probate, for "to probate" by its very definition means to prove before the proper judicial officer all the documents comprising the last will and testament of the decedent and in this situation the petition for administrative probate would not have been complete. As was stated in *Syfer v. Dolby,* 182 Md. 139, 149, 32 A. 2d 529, 534 (1943) " '[a] codicil is a part of the will, the codicil, or codicils, if more than one, and the original will, making but one testament, as much as if written on the same paper.' "

Thus, notwithstanding the professed good faith and apologetic excuse declared by the appellant, considering the exhortation of the testatrix not to reveal the second codicil

until thirty days after her death it seems that the appellant, under these circumstances, acted with "undue haste" when, six days after her death, and without revealing the existence of the second codicil, he was successful in obtaining administrative probate by a deception perpetrated upon the Register of Wills. This fraud caused the Register to "render an erroneous judgment" when the appellant made oath that there was no other "will". Since the appointment was thus obtained by fraudulent means, not only must the means be condemned, but the result produced by them must be annulled. *Lutz v. Mahan, supra,* and *Hayman v. Messick, supra.*

The conduct of the appellant, who admittedly was guilty of fraud and deceit in obtaining administrative probate and appointment was certainly outside the umbra of the "statutory umbrella" protecting personal representatives who act according to law. *Hayman v. Messick, supra.*

Under our holdings in *Lutz v. Mahan, supra,* and in *Hayman v. Messick, supra,* "the letters ought not to have been granted" to the appellant, his appointment as personal representative was void *ab initio,* the proceedings should be disregarded entirely by the Orphans' Court and administration should be granted "as if it had never taken place." As we see it, since there has been no valid appointment of a personal representative, the period of "six months following the first appointment of a personal representative under any will" has not yet begun to run.

"It is a well known general principle of law in this State that a codicil operates as a republication of the whole will, and, so far as it is not revoked or altered by the codicil to include any alterations made before the date of the codicil, it speaks from the date of the codicil." *Colley v. Britton,* 210 Md. 237, 247, 123 A. 2d 296, 301 (1956). A codicil executed in due form republishes a will as amended by a previous codicil. *Syfer v. Dolby, supra. See also Allers v. Tittsworth,* 269 Md. 677, 309 A. 2d 476 (1973) where a codicil dated in 1970, republishing a will dated in 1969, was held to bring the will within the recodification of Article 93 and subject to the

provisions of Art. 93, § 4-401, applicable to wills executed after January 1, 1970, and *Weaver v. McGonigall,* 170 Md. 212, 183 A. 544 (1936).

Since the doctrine of republication is recognized in this state and since the legislature is presumed to have had and acted with respect to, full knowledge and information as to prior and existing law and legislation on the subject of the statute, as well as the policy of the prior law, *see Allers v. Tittsworth, supra,* it could well be held — although not so argued by the appellees — that the caveats of Albert Schlossberg and Gertrude Auerbach were "timely filed" pursuant to the provisions of Art. 93, § 5-207 (a), set forth above, permitting a caveator "if a different will is subsequently offered for probate" to file his petition within three months after such latter probate or within six months after the first appointment of a personal representative, whichever occurs later.

Thus, "a different will subsequently offered for probate" under the facts existing here comprises not only the original will as modified by the first codicil, but encompasses as well the second codicil when it is later offered for probate, and the will together with both the codicils then were subject to caveat proceedings if the appellees' petitions were filed within three months after the probate of the second codicil.

Such a construction lends both rhyme and reason to the provisions of Art. 93, § 5-207 (a) and relief would thereby be afforded a caveator who, not willing to attack the validity of a will probated, subsequently learns of a later codicil which is then offered for probate but the existence of which has been concealed — either fraudulently or innocently — for more than six months after the initial appointment of a personal representative. Any different construction would tend to lend encouragement to the concealment of codicils to wills and visit substantial unfairness upon those interested persons who may be disinherited by the terms of a later offered codicil.

Although the Orphans' Court did not delineate its reasons in denying the appellant's motions to dismiss the caveats

filed by the appellees, we think that any of these grounds would sustain the conclusion that they were "timely filed."

> *Judgment of the Court of Special Appeals dismissing the appeal affirmed; case remanded to the Circuit Court for Montgomery County, sitting as the Orphans' Court, for further proceedings; costs to be paid by the estate of Lena S. Jacobs.*